595 So.2d 65 (1991)
Jack R. SNYDER, et al., Petitioners,
v.
BOARD OF COUNTY COMMISSIONERS OF BREVARD COUNTY, Florida, Respondent.
No. 90-1214.
District Court of Appeal of Florida, Fifth District.
December 12, 1991.
Rehearing Denied March 20, 1992.
*66 Frank J. Griffith, Jr. of Cianfrogna, Telfer & Reda, P.A., Titusville, for petitioners.
Robert D. Guthrie, County Atty. and Eden Bentley, Asst. County Atty., Merritt Island, for respondent.
PER CURIAM.

I. This Case

Petitioners, owners of a one-half acre parcel of land zoned GU (General Use) under the Brevard County Comprehensive Zoning Plan ordinance, desire to erect a multi-unit dwelling on their property and petitioned the governmental zoning authority, the Board of County Commissioners of *67 Brevard County, to rezone their land to a RU-2-15 medium density multiple-family dwelling zoning classification.
The Brevard County Comprehensive Plan[1] provides for future land use designations and service sector (maximum allowable residential density)[2] designations as shown on a Future Land Use Map Series (FLU Map Series)[3] within the Future Land Use Element (FLUE).
Upon receiving the rezoning application from the landowners, the staff of the Brevard County Comprehensive Planning and Zoning Department (P & ZD) reviewed it and made certain findings in a standard Rezoning Review Worksheet, including (1) that the rezoning request was consistent with the Brevard County Comprehensive Plan; (2) that the proposed zoning was consistent with the Future Land Use designation for this land (residential); (3) that the service sector designation representing the maximum allowable densities was urbanizing; (4) that while the maximum allowable density in the "urbanizing" service sector designation generally permitted only 12 units per acre, the planning policy[4] permitted the service sector boundaries to be extended 660 feet, and since the subject property was within 660 feet of an urban district permitting a density of 30 units per acre, the district boundaries could be extended to include the subject property permitting a density of greater than 12 units; therefore the rezoning request for 15 units per acre was consistent with the service sector designation; (5) the proposed use met all requirements relating to potable water, sanitary sewer, solid waste facilities, parks and recreation; and (6) the proposed rezoning was compatible with surrounding lands zoned GU and RU-2-15. However, the staff noted in the Rezoning Review Worksheet that this parcel of land appeared to be located within a 100 year flood plain and because, for environmental reasons, the maximum residential density in a 100 year flood plain was two units per acre, that for this reason alone, the rezoning request should not be approved.
An advertised public hearing was held before the Planning and Zoning Board. The findings of the P & ZD staff were presented. Nearby residents expressed their opposition to the rezoning. One member of the P & ZD Board asked about the flood plain problem. In response, the minutes of the hearing show that a Mr. Edwards, representing the P & ZD staff, stated that the landowners had submitted a topographical map showing the elevation of the subject property was such that it was "within the purview of taking it out of the 100 year Flood Plain at the time of development." The Planning and Zoning Board recommended approval of the zoning change.
At a subsequent public hearing before the Brevard County Board of Commissioners where the Planning and Zoning Board's recommendation was considered, a number of residents living in single-family homes north of the property sought to be rezoned appeared and spoke against the rezoning request. The objecting citizens expressed the usual concerns about traffic and parking problems, that they considered the neighborhood to be mainly single-family, that there was already multifamily zoning in the area that was not selling and that the residents did not want multifamily use in the area.
The landowners pointed out that their land was 530 feet north of SR 520, where an automobile agency and other businesses were located, that the single-family residences of the objecting residents were further to the north of the petitioners' land, that access to the petitioners' property did not require passage by the single-family homes further to the north, that construction on petitioners' land would not cause traffic congestion for those homes and that petitioners' use of their land would constitute transitional zoning between the auto agency (business) to the south and the single-family residences to the north. The P *68 & ZD staff review worksheet before the county commissioners had been amended by a notation by Mr. Edwards to show that the original statement that the land was within the 100 year flood plain (and for that reason restricted to two units per acre) had been refuted.
The Board of County Commissioners overruled the Planning and Zoning Board's recommendation and denied the rezoning request without giving any reason.
The landowners filed in the circuit court a Petition for Writ of Certiorari alleging that the zoning classification sought by the landowners was consistent with the county Comprehensive Zoning Plan as required by section 163.3194(1)(a), Florida Statutes, and that its denial was arbitrary and unreasonable and had no substantial relation to the public health, safety, morals or general welfare and was not according to the essential requirements of law. The County's response to the landowners' certiorari petition referred only to the citizens' various objections to the rezoning and to the fact that the P & ZD staff had initially recommended a maximum of two units per acre.[5]
A three judge panel of the circuit court, sitting in its appellate capacity, denied the landowners' petition for certiorari review, thus affirming the denial of the landowners' request to rezone their land.
The landowners filed this petition for certiorari in this court to review the circuit court's denial of relief and claim that the circuit court departed from the essential requirements of law in failing to require the County Commission to make findings of fact and give reasons for its action in disregarding the recommendations of its Planning and Zoning Board and in denying the landowners' request for rezoning to a land use and a density or intensity of use that was consistent with the future land use plan of the applicable comprehensive plan adopted by the local planning agency in accordance with state law.
The County Commission argues that the instant case involves rezoning and that because all actions of county commissioners in enacting or amending or declining to adopt or amend county ordinances constitute legislative action,[6] the County Commission is not required to make findings of fact or state reasons for their actions and that the constitutional separation of powers doctrine requires the judiciary to give deference to such legislative acts and to uphold them if their reasonableness is even "fairly debatable."
The scope of our review is limited to a determination as to whether the circuit court afforded the landowners procedural due process and applied the correct law.[7]
When acting in a truly legislative function, a legislative body has the discretion to determine what the law should be and is not required to make findings of fact and statement of reasons supporting its decision as is necessary in order for the courts to effectively review governmental action for compliance with constitutional and statutory rights and limitations. The essential issue in this case is whether the decision by the County Commissioners to deny the landowners' rezoning request in this instance was a legislative act[8] to *69 which, under the constitutional separation of powers doctrine, the judiciary must give a deferential standard of review and uphold if "fairly debatable."[9] Proper resolution of this issue necessarily implicates constitutional considerations relating to private property rights, separation of powers and the powers and duties of the respective branches of government.

II. Government Land Use Regulations as a Restriction on Private Property Rights

The founders of the government of the United States accepted the English concept of private ownership of property, recognized that right in the federal constitution,[10] reserving certain lands for use by the federal government and the general public, ceded lands to the States and granted other lands to private ownership. Under English law adopted as the common law of Florida and other states, ownership of private property included the right to freely use it as the owner desired with but two limitations, viz: (1) a citizen could not lawfully do anything that constituted a danger to the health, safety, morals or welfare of the general public and that concept included the use of privately owned land, and (2) privately owned land could not be used as to interfere with the same rights of others to use their property. These limitations on the use of private property were exemplified by, and co-extensive with, the common law remedies for the abatement of public and private nuisances. The power of government to protect the general public from the dangerous conduct of individuals, including the misuse of private property, is sometimes known as the "police power." Under common law the presumption is in favor of the owner's right to use his property and the burden is on the government to allege and prove that the owner's actual or threatened use constituted a public nuisance necessitating a restriction in order to protect the public.
The value of real property is a product of existing and potential intrinsic value and use value. The intrinsic value of land relates to the value of its existing metal, mineral, oil and gas deposits, water, soil, sod, trees, fish, game, etc. Except for some land containing phosphate, in Florida, the far greater value of land is its potential use value, not its intrinsic value. This is especially true of vacant land.
In broad perspective land is used in varying degrees of intensity for agricultural, residential and commercial (business and industrial) use. As a result of location with relation to growth in population and production there is a long term progression of need and demand through these categories of use. In a free market the increased need and demand results in an increase or decrease of value which also progresses through the categories and through the degrees of intensity (or density) of use within land categories. Increase in population and production causes an increased need and demand for land to move upward in such category and to more intense use in each category resulting in progressive increases in the use value of land.
The ownership of property is meaningful only to the extent that the owner has the right to use property in such manner as the owner desires. In a society which recognizes the right of a private citizen to own property,[11] the citizen-owner has the right to make such use of privately-owned property as the citizen-owner desires, subject only to the limitation that private property cannot be used in any manner that encroaches upon the rights of other citizens. Anglo-American law recognizes and protects private property rights and recognizes that the only proper limitation on the right of a citizen to use private property is the common law of nuisance as now embodied in the constitutional concept of police *70 power.[12] Police power includes the authority of the government to limit a citizen's use of privately-owned property as may be necessary for the protection of the health, morals and welfare of the general public. The only lawful basis for all building codes and zoning ordinances is the police power. See Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (upholding constitutionality of city ordinance which restricted commercial development of owner's property on basis of police power).
In sum, the right of a citizen to own property is one of the most fundamental and cherished rights and is the cornerstone that anchors the capitalistic form of government guaranteed by the federal and state constitutions.[13] The most valuable aspect of the ownership of property is the right to use it. Any infringement on the owner's full and free use of privately owned property, whether the result of physical limitations or governmentally enacted restrictions, is a direct limitation on, and diminution of, the value of the property and the value of its ownership and accordingly triggers constitutional protections.[14] All incidents of property ownership are protected from infringement by the state unless regulations are reasonably necessary to secure the health, safety, good order, and general welfare of the public. Shriner's Hospitals for Crippled Children v. Zrillic, 563 So.2d 64, 68 (Fla. 1990) as summarized in Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla. 1991). Indeed, government regulations which either do not substantially advance legitimate state interests or which deny an owner economically viable use of his land, or both, effect a taking requiring payment by the government to the landowner of just compensation.[15]Agins v. City of Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); Orlando/Orange County Expressway Authority v. W & F Agrigrowth-Fernfield, Ltd., 582 So.2d 790 (Fla. 5th DCA 1991). As the police power is also the basis for the authority of government to formally or informally (reverse condemnation) take private property for a public use, a governmental land use restriction, although within the police power, may also constitute a compensable taking.[16]See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); see, e.g., Nollan v. California *71 Coastal Commission, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

III. Governmental Powers and the Separation of Powers Doctrine.

The Constitutions of the United States and of the State of Florida separate all powers of government into three, and only three, branches, viz: the legislative, the executive and the judicial, and the Constitution of the State of Florida prohibits persons holding office in any branch from exercising power properly belonging to the other two. Art. II, § 3, Fla. Const.; Chiles v. Children A B C D E & F, 589 So.2d 260 (Fla. 1991) (holding that section 216.211, Florida Statutes, whereby legislature assigned to executive branch discretionary authority to reapportion the state budget, to be an unconstitutional violation of the separation of powers doctrine).
The court in Chiles explained that the separation of powers doctrine encompasses two fundamental prohibitions, first, that no branch of government may encroach upon the powers of another and second, that no branch may delegate to another branch its constitutionally assigned power. As illustrated by Chiles, the separation of powers doctrine is not some historic relic of a bygone era but instead remains a fundamental principle underlying our system of government, designed to keep the individual branches of government separate to prevent the fusion of the powers of any two branches into the same department which would ultimately result in the destruction of liberty. Chiles, 589 So.2d at 262-264. See also Locke v. Hawkes, 1991 WL 231589 16 F.L.W. S716 (Fla. Nov. 7, 1991).
The essence of the legislative power is to establish public policy by the enactment of general rules of law for future uniform application to specific factual instances. The executive function executes, or carries out, or effectuates, or applies, the legislative intent by initially interpreting the intent of legislation, initially determining the facts relating to a specific condition or event, and by initially applying the legislated general rule of law to the facts of the specific instance or case. When questions arise as to the true intent of the legislation, or as to its legality under constitutional and statutory provisions and common law, or as to its proper application in a particular instance, or as to the truth of the facts involved in the particular case, the final determination of those matters is by an adjudication by the judicial branch of government.
Because a zoning ordinance ordinarily reserves to the same local legislative body that enacted the original ordinance adopting the general zoning policy (i.e., city council or board of county commissioners) the decision-making in the process of applying the general provisions of the ordinance to individual parcels of land (commonly called "rezoning"), courts have often attached the legislative label to all actions of that body that involve zoning, including "rezoning" of particular parcels of land. In practice, the local zoning authority wears many functional hats and appears to often exercise all three governmental functions.[17] For example, in Florida, both of the two local governmental zoning bodies involved with zoning (city councils and boards of county commissioners) act in a true legislative function when originally enacting, and in making substantive amendments to, general zoning and other ordinances but they also act in an executive capacity when they hire and supervise employees and agents, and appoint administrative (P & Z) boards, to execute, apply and enforce ordinances. Such local governmental zoning bodies also sometimes act in the judicial mode through appointed code enforcement boards with ostensible authority to hear and decide issues in cases and controversies involving specific instances and also to impose penalties. The exercise of the judicial function occurs directly when the local zoning authority reviews the actions and recommendations of its own employees and boards as to issues involving the application of zoning ordinances in *72 specific cases involving particular circumstances and parcels of land.
When judicial functions are exercised by government bureaus acting under legislative authority and direction, it has become fashionable to describe the action as "administrative" or "quasi-judicial." The true character of many of these actions is obscured by the form in which they are done because many such actions are not done directly by the governmental body but by administrative agencies appointed, hired by, acting for, and, directly or indirectly, subject to the will of the governmental legislative body and also because some of the actions of the governmental zoning body are evidenced in the form of a legislative action, such as by "amendment" to a general ordinance, when the true substantive character of the action being taken is the application of the legislated general rule of zoning law to a particular instance and parcel of land. The basic zoning ordinance would not be valid as a legislative act if it were not of general application. The action of granting or denying a particular rezoning request relating to a particular parcel of land is not usually done in the form of executive action as is more readily apparent when a code enforcement officer, employed by the governmental zoning body, initiates code enforcement action. Nor is it done in the form of a judicial order or judgment granting or denying the request for rezoning. It is normally accomplished in the form of legislative action by amending the general zoning ordinance or by refusing to take any action thereby leaving a particular parcel of land within its present zoning classification thereby effectively denying a lawful use the owner desires to make of it. In substance, however, this latter action is not legislative action. In Florida, commissioners wear a legislative hat in enacting the original zoning ordinance and in making amendments to it that are of broad general application. On other occasions the commissioners act in an executive or "administrative" capacity in hiring and directing personnel to enforce zoning code violations and in granting special exceptions, conditional use permits, variances and site plan approvals.[18]

IV. Rezoning  Is it Executive, Legislative or Judicial Action?

IV. (A) Some Basic Zoning and Rezoning Concepts

Historically, zoning developed as a governmental effort to create a fixed-blueprint of development.[19] The original zoning ordinances were to have broad uniform application to all. It was believed that the local governmental body would allow or disallow under fixed terms, applicable to all, a particular type of development in a particular area. Development was seen as a matter of right if the fixed criteria of the zoning ordinances was satisfied. This also led to the perception that actions on rezoning requests, as well as the original enactment of general zoning ordinances, were legislative in nature.[20]
However, in reality most development has not occurred "as-of-right" under actual zoning practices. Most communities in actual practice have zoned their undeveloped land under a highly restrictive classification such as "general use" and agriculture. Typically, in such "zones" the most development allowed was one single family residence on very large parcels.[21] The original *73 intent was not to permanently preclude more intensive development but to adopt a "wait and see" attitude toward the direction of future development. Most government officials have little motivation to incur the "wrath of neighbors by zoning vacant land for industrial, commercial, or intensive residential development in advance of an actual proposal for development."[22]
In reality, therefore, at the inception of zoning most land was zoned according to its then use, exceptions were grandfathered in and most vacant land was underzoned or "short-zoned."[23] In order for development to proceed, rezoning becomes not the exception, but the rule. The burden is thus then placed on the landowner, who wishes to exercise his constitutional right to use his vacant property or make a more intense use of his underzoned land, to first obtain permission from the government. Whereas prior to zoning the burden was on government to allege and prove that protection of the public required a restriction on the use of private property, after zoning is adopted the roles are reversed and use of land is not only frozen but the burden is shifted to the landowner to obtain governmental permission to use privately owned property. Furthermore, rezoning is granted not solely on the basis of the land's suitability to the new zoning classification and compatibility with the use of surrounding acreage, but, also, and perhaps foremost, on local political considerations including who the owner is, who the objectors are, the particular and exact land improvement and use that is intended to be made[24] and whose ox is being fattened or gored by the granting or denial of the rezoning request.
In this context, local governments frequently use governmental authority to make a rezoning decision as leverage in order to negotiate, impose, coerce and compel concessions and conditions on the developer.[25] Such techniques used by local zoning officials as "floating zones,"[26] or "contract or conditional zoning" are more analogous to administrative or executive decision-making than legislative policy-making and would be immediately and justifiably condemned in any proper judicial forum as being unjust and unfair if not extortion.
The issue on such a rezoning request is essentially between the landowner and the governmental zoning authority and its agency and it is the governmental zoning authority or it agencies that effectively establishes the procedure, formulates the issues and makes the decisions.
When land is restricted and regulated by zoning ordinances several things occur. Immediately and over time land that can be used more freely under zoning increases in market value as compared to similar land the use of which is more restricted by zoning. The value of land zoned and used for residential purposes is further enhanced because of the spaciousness occasioned by the non-use of nearby land, the use of which is restricted by zoning.
For these and other reasons persons owning or using land naturally prefer that nearby lands not be used at all and that their use be continued to be restricted by zoning regulations. The legislative and executive *74 are the political branches of government and the governmental zoning bodies exercising those functions have politicized the "re-zoning" process by forming the issues and considering and determining them at public meetings to which nearby landowners are encouraged to appear and oppose requests for rezoning and the issue-forming, fact-finding and decision-making is conducted in a politicized forum and atmosphere rather than in a neutral forum by an independent deliberative body determining facts in a detached manner and applying general legislative rules of law impartially to individual cases or specific instances.
Because the procedure in considering the rezoning of individual parcels has been made political and the decision to grant them has been traditionally made in the form of enacting amendments to the general ordinances, general zoning bodies have often successfully urged that such decisions are legislative in character and that a proper respect for the separation of powers doctrine requires the courts to avoid involvement and that to the extent the court is involved it must defer to the "legislative" action by upholding it if it can be justified as being even "fairly debatable."

IV. (B) Traditional Judicial Review

Where a zoning decision constitutes truly legislative action, the "fairly debatable" or deferential standard of review is properly employed by reviewing courts as in the review of legislation relating to many other subject matters. See, e.g., Village of Euclid v. Ambler Realty Co. So long as a truly legislative decision is "fairly debatable" and open to dispute or controversy on grounds that make sense as to whether the zoning or other legislative action protects the public health, welfare, safety, or morals of the community, the property owner has a formidable burden[27] and the zoning action will be upheld,[28] unless the present zoning classification would be arbitrary, unreasonable or confiscatory.[29]
It has frequently been broadly stated that a rezoning action is a legislative action, not a quasi-judicial action.[30] In Schauer v. City of Miami Beach, 112 So.2d 838, 839 (Fla. 1959), the supreme court stated:
It is obvious to us that the enactment of the original zoning ordinance was a legislative function and we cannot reason that the amendment of it was of different character. (Emphasis added).
The answer is that there are two distinctly different types of amendments to zoning ordinances, one of which is legislative and the other of which is not. Schauer involved the enactment of a change in general policy of widespread applicability affecting a large area of the community rather than a "rezoning" that relates only to the application of an existing general legislated policy (i.e., a general rule of law) to a particular parcel of land and to owners whose property interests were easily identifiable.[31] In a subsequent case, Florida *75 Land Co. v. City of Winter Springs, 427 So.2d 170 (Fla. 1983), the supreme court rejected the position that the rezoning in that case was a quasi-judicial act but the holding in that case must also be considered with regard to the facts and issues there involved. In Florida Land Co., the "rezoning" described an amendment to the city's official zoning map and comprehensive land use map which were incorporated in a comprehensive plan and some citizens sought a referendum. Thus, the validity and applicability of a legislatively-enacted comprehensive zoning plan was at issue in Florida Land Co. That is not true in this case which involves the following issues:
(1) what is the substantive theoretical nature or character of governmental action involved in applying a previous legislated general zoning ordinance (a comprehensive zoning plan) to a particular parcel of land,
(2) whether such governmental action is subject to judicial review and, if so,
(3) what are the necessary prerequisites for judicial review (i.e., the necessity for an established issue-forming, fact-finding, decision-making, record-making, due-process respecting, practice and procedure, including a correct allocation of burdens relating to the necessity of presenting evidence, appropriate standards of proof and standards of judicial review).
(4) the proper standard and scope of judicial review and, lastly,
(5) the application of the answers to those questions to the facts in this case.
When rezoning actions are not subject to effective judicial review, the potential arises for abuse, favoritism, patronage and arbitrariness. Both the federal and state constitutions provide that the legislature shall not take property without due process of law and just compensation. The perception of many is that "the tail of legislative confiscation by caprice has been permitted to wag the dog of judicial constitutional protection."[32]
Broad judicial statements suggesting that all rezonings are legislative in nature are out of step with the realities of zoning practice and also with the evolvement of zoning law. Since the Florida Supreme Court first stated that it could not reason the amendment of a zoning ordinance was different from the legislative function involved in its original enactment, Schauer, 112 So.2d at 839, the mechanics of zoning has come to be better known and understood and there have been significant changes in zoning law. It has become clear that there are, or should be, two zoning maps, viz., a comprehensive future land use planning map, representing a legislative goal or ideal[33] and a second zoning map that merely delineates the actual zoning as it presently exists. The later map is merely a record of the original zoning and of the result of all "rezoning" decisions and is analogous to records, such as minute books, docket books and judgments merely recording the result of judicial action by the courts. Changes in comprehensive zoning-planning maps constitute legislative action; changes in zoning maps showing existing zoning are ministerial clerical recordings of the result of non-legislative decision-making in cases involving the application of the legislative rule of zoning law to a specific parcel of land following a decision on a particular application by a particular owner.
In 1985, the Florida Legislature enacted the Local Government Comprehensive Planning and Land Development Regulation Act.[34] Rezonings under the new act are required to be consistent with the local comprehensive plan. Under the prior statutes, this was permissive, not mandatory. As a result, Florida courts have adopted a standard of strict scrutiny in reviewing the consistency between local development orders (which include rezoning decisions) and *76 the local comprehensive plan (which represents general legislative policy).[35]
Moreover, Florida courts, in order to curb the favoritism, abuses and inconsistencies resulting from piecemeal rezoning decisions being treated as legislative in character,[36] have developed a number of judicial doctrines not normally applied to legislative decisions. For example, "spot zoning" is likely to occur when local rezoning decisions are given the deference of legislative actions. The "change or mistake" rule has been developed to curb some of the abuses of "spot zoning." Also, Florida courts have permitted such practices by local zoning authorities as "floating zones" and "conditional or contract zoning."[37] As noted earlier, these practices are more closely analogous to executive or administrative actions than the enactment of legislative policy.
In addition, the treatment of rezoning decisions as legislative has led to confusion over the basis for circuit court certiorari review of zoning decisions.[38] Even though zoning decisions have been held by Florida courts to be legislative decisions and not subject to review by certiorari, many rezoning decisions have been held to be reviewable by certiorari because a zoning ordinance, charter or special act so provides.[39] Some decisions omit any basis for certiorari review.[40] Moreover, section 163.3215(1), Florida Statutes (1987) now authorizes rezoning orders which are challenged on the basis of consistency with the local comprehensive plan, to be subject to injunctive relief in circuit court and disagreement exists over the appropriate standard of review.[41]

IV. (C) Fasano v. Board of County Commissioners

Some courts have maintained the fairly debatable standard over all, but undertake a more searching review of the consistency with the underlying planning. Other courts have moved away from the fairly debatable standard toward stricter scrutiny by reasoning that local rezonings are quasi-judicial in character and are not due the judicial deference inherent in the fairly debatable standard.[42] The leading case expounding this latter view is the landmark decision of the Oregon Supreme Court in Fasano v. Board of County Commissioners, *77 264 Or. 574, 507 P.2d 23 (1973) (en banc).
In Fasano, the Board of County Commissioners had rezoned thirty-two acres of land zoned single-family residential to planned residential which allowed the construction of a mobile home park. The adjacent homeowners unsuccessfully opposed the rezoning. On appeal to the Oregon Supreme Court, the commissioners argued that the commissioners' decision was presumptively valid and that the homeowners had to show the decision was arbitrary and capricious to obtain relief.
The Oregon Supreme Court rejected this argument, stating:
At this juncture we feel we would be ignoring reality to rigidly view all zoning decisions by local governing bodies as legislative acts to be accorded a full presumption of validity and shielded from less than constitutional scrutiny by the theory of separation of powers.[43]
The Fasano court reversed, holding the action was judicial in nature because it did not entail the development of a general policy applicable to a large portion of the public but the application of a general policy to specific identifiable parties and interests. The court used the following test to distinguish judicial from legislative actions:
Basically, this test involves the determination of whether action produces a general rule or policy which is applicable to an open class of individuals, interests, or situations, or whether it entails the application of a general rule or policy to specific individuals, interests or situations. If the former determination is satisfied, there is legislative action; if the latter determination is satisfied, the action is quasi-judicial.[44]
The court found the principal legislative documents were the comprehensive plan and the overall zoning ordinances enacted to carry out the comprehensive plan.
The burden of proof, the Fasano court said, was on the rezoning applicant to show the change was in conformance with the comprehensive plan. Relevant in meeting this burden was a showing that there was a mistake in the original ordinance or the area had physically changed.[45]
The Fasano court reasoned that even though applying a greater scrutiny to rezoning actions might mean county commissioners could not adjust as freely to changed conditions, the "dangers of making desirable change more difficult" was to be less feared than "the dangers of the almost irresistible pressures that can be asserted by private economic interests on local government."[46] The court concluded an adequate record with findings of fact must support a rezoning decision.
An increasing number of jurisdictions have either adopted the Fasano standard or accepted it in limited form.[47] Besides Oregon, the supreme courts in the following states have adopted the Fasano approach: Washington,[48] Idaho,[49] Kansas.[50] The District of Columbia uses the quasi-judicial approach to rezonings as the result of legislation.[51] States that have accepted the doctrine in limited form or expressed an inclination toward quasi-judicial review of rezonings are Virginia,[52] Nevada,[53] Illinois,[54] *78 Hawaii,[55] Colorado[56] and Montana.[57]
Florida courts have also applied the principles of Fasano.[58] In Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987), the court cited to Fasano and applied the Fasano standard of review where a zoning decision is challenged as violative of the comprehensive land use plan. The court in Machado said:
Analogously where a zoning action is challenged as violative of the comprehensive land use plan the burden of proof is on the one seeking a change to show by competent and substantial evidence that the proposed development conforms strictly to the comprehensive plan and its elements. See Fasano v. Board of County Comm'rs, 264 Or. 574, 507 P.2d 23 (1973) (en banc). See also Comment, Burden of Proof in Land Use Regulations: A Unified Approach and Application to Florida, 8 Fla.St.U.L.Rev. 499 (1980) (the proof of conformity of the zoning action to the land use plan must be discernible to a reviewing court on a verbatim record).[59]

IV. (D) Toward a Functional Analysis

We agree with the Fasano approach and conclude that rezonings are not legislative in nature. One writer has cogently contrasted legislative and judicial or quasi-judicial action in the following way:
First, judicial action is narrow in scope, focusing on special individuals or on specific situations, while legislative action is open-ended, affecting a broad class of individuals or situations... .
Secondly, legislative action results in the formulation of a general rule of policy, while judicial action results in the application of a general rule of policy... .
Thirdly, it is generally stated that judicial action is retrospective, determining `[t]he rights and duties of parties under existing law and with relation to existing facts... .' By contrast, legislative action is said to be prospective, determining `[w]hat the law shall be in future cases'... .
Peckingpaugh, Burden of Proof In Land Use Regulation: A Unified Approach and Application to Florida, 8 F.S.U.Law Rev. 499, 504 (1980). Initial zoning enactments and comprehensive rezonings or rezonings affecting a large portion of the public are legislative in character. However, rezoning actions which have an impact on a limited number of persons or property owners, on identifiable parties and interests, where the decision is contingent on a fact or facts arrived at from distinct alternatives presented at a hearing, and where the decision can be functionally viewed as policy application, rather than policy setting, are in the nature of executive or judicial or quasi-judicial action but are definitely not legislative in character.[60]
*79 This court has recently applied this type of functional analysis to a zoning action in City of Melbourne v. Hess Realty Corp., 575 So.2d 774 (Fla. 5th DCA 1991). This court reasoned that a challenge to the sufficiency of the evidence could be brought by certiorari because the procedure for granting or denying a conditional use permit was quasi-judicial in nature. However, this court concluded when the challenge was to the validity of the underlying zoning ordinance and its constitutionality, then injunctive relief should be sought.
Also recently in Hirt v. Polk County Board of County Commissioners, 578 So.2d 415 (Fla. 2d DCA 1991), the second district applied a functional analysis approach and found that a decision as to whether a zoning action was quasi-judicial or legislative rested on (a) the nature of the challenge and (b) the manner in which the determination is made. Although the Hirt court made passing reference to rezoning decisions as being legislative in nature, citing Schauer, the court was not addressing a rezoning action but a challenge to a developer's proposed plans under a planned unit development.
The nature of the challenge, in this case, is not to the validity or constitutionality of the underlying comprehensive plan or to the zoning legislation enacting that plan, but to the validity of the action denying the requested rezoning of one parcel of real property. In the instant case, the petitioners argued before the circuit court that the rezoning request was consistent with the Comprehensive Plan and that the County Commission should approve a rezoning request consistent with the comprehensive plan and, further, that the Commission failed to give reasons or to make any findings of fact to support its denial.[61]
The County Commission, in its response to the certiorari petition before the circuit court, never argued that the denial of the rezoning request was proper because the parcel of land was in the flood plain or that the rezoning request was inconsistent with the comprehensive plan. Rather, the Commission argued that the existing GU zoning was consistent with the comprehensive plan and the denial of the rezoning was proper. The Commission maintained it had the "legislative discretion to determine" compatibility of a particular zoning classification in a zoning location so long as the board remains within the parameters of the residential designation of the comprehensive plan and the circuit court should apply the deferential fairly debatable test. However, as stated earlier, when enacting original zoning ordinances which implement a comprehensive plan, communities, including Brevard County, frequently "underzone" or "short-zone" underdeveloped areas and adopt a "wait and see" attitude insofar as subsequent proposals for zoning changes. Contrary to the Commission's argument, this does not establish legislative intent in enacting the original zoning ordinance which prefers the existing classification over a subsequent proposed classification.
Moreover, the manner in which the decision was made in this case was not legislative in nature. A hearing was held after notice to the parties and the decision was contingent on the evidence adduced as at an executive, (administrative), or judicial proceeding. This zoning action was not an action producing a policy of general applicability to a wide portion of the public, but an application of policy to a specific individual and a single parcel of land after a proceeding in which a decision was made between two distinct alternatives.
The application of a fairly debatable, or for that matter, any other deferential or discretionary standard, is not the correct standard of judicial review where the issue and decision involves the proper application of a legislated rule of law to a particular *80 piece of property.[62] The initial burden was on the petitioners to present a prima facie case that the requested zoning change was in conformance with the comprehensive plan.[63]
In the instant case, the petitioners met their initial burden of showing the requested change was in conformance with the comprehensive plan. The P & ZD staff report found that the zoning change was consistent with the comprehensive plan and the Director testified at the hearing in front of the Planning and Zoning Board that the property would not be in the flood plain. The verbatim record of this hearing, as well as the rezoning application and staff report, are sufficient evidence of a prima facie case.[64]
Under Machado, Fasano and other Florida decisions, in a quasi-judicial review,[65] after the rezoning applicant meets his initial burden, the burden shifts to the planning commission to show that the rezoning request is inconsistent with the comprehensive plan and "adverse to the public interest."[66] The burden is on the governmental zoning authority to assure that an adequate record of the evidence is prepared, including the relevant evidence establishing the rezoning applicant's prima facie case such as the rezoning application, the planning and zoning staff report, and the minutes of any hearing before the Planning and Zoning Board. This evidence should be provided to a reviewing court. In addition, specific, written, detailed findings of fact must be entered by the zoning authority to support any decision denying the landowners' requested use of their land.[67]

V. Conclusion

We hold that:
(1) While enactments of original general comprehensive zoning and planning ordinances and maps, and amendments thereto of broad general application, constitute legislative action establishing rules of law of general application; subsequent governmental action which in substance involves the proper application of the previously enacted general rule of law to a particular instance (i.e., a specific parcel of privately owned land under then existing conditions), regardless of the form in which presented (i.e., whether involving a petition for rezoning, for a special exception, for a conditional use permit, for a variance, for a site plan approval, or whatever) does not constitute legislative action requiring judicial deferential review as to reasonableness under the powers clause of the state constitution (Art. II, § 3, Fla. Const.) and the separation of powers doctrine of the United States Constitution.
(2) Governmental action in the application of general legislated laws limiting or restricting or regulating the use of land to specific parcels of privately owned lands directly impacts basic substantive property rights expressly protected by Article I, Section 2 of the Florida Constitution, and implicates the owners' constitutional right of meaningful access to the courts, Article I, *81 Section 21, Florida Constitution, for protection of those constitutional rights.
(3) Landowners adversely affected by the action of a governmental zoning authority are entitled to access to the trial and appellate courts of this state for full judicial review of such governmental action.
(4) Since a property owner's right to own and use his property is constitutionally protected, review of any governmental action denying or abridging that right is subject to close judicial scrutiny. Effective judicial review, constitutional due process and other essential requirements of law, all necessitate that the governmental agency (by whatever name it may be characterized) applying legislated land use restrictions to particular parcels of privately owned lands, must state reasons for action that denies the owner the use of his land[68] and must make findings of fact and a record of its proceedings, sufficient for judicial review of: the legal sufficiency of the evidence to support the findings of fact made, the legal sufficiency of the findings of fact supporting the reasons given and the legal adequacy, under applicable law (i.e., under general comprehensive zoning ordinances, applicable state and case law and state and federal constitutional provisions) of the reasons given for the result of the action taken.
(5) The initial burden is upon the landowner to demonstrate that his petition or application for use of privately owned lands, (rezoning, special exception, conditional use permit, variance, site plan approval, etc.) complies with the reasonable procedural requirements of the ordinance and that the use sought is consistent with the applicable comprehensive zoning plan.[69] Upon such a showing the landowner is presumptively entitled to use his property in the manner he seeks unless the opposing governmental agency asserts and proves by clear and convincing evidence[70] that a specifically stated public necessity requires a specified, more restrictive, use. After such a showing the burden shifts to the landowner to assert and prove that such specified more restrictive land use constitutes a taking of his property for public use for which he is entitled to compensation under the taking provisions of the state or federal constitutions.
Applying these principles to the facts of this case, we find (1) that the landowners' petition to the zoning authority for a zoning classification of RU-2-15 for their parcel of land demonstrated conclusively that such use was consistent with the county comprehensive plan of the county general zoning ordinance, (2) that there was no assertion or evidence that a more *82 restrictive zoning classification was necessary to protect the health, safety, morals or welfare of the general public and (3) that the petitioning landowners were entitled to the zoning classification sought and its denial without given reasons supported by facts was, as a matter of law, arbitrary and unreasonable and judicially reviewable and reversible.
In denying the landowners' petition for certiorari review of the zoning authority's action denying their requested rezoning, the circuit court denied the landowners effective judicial review, due process and other essential requirements of law. Accordingly, the petition for certiorari in this case is granted, the order denying certiorari in the circuit court is quashed, and this cause is remanded for proceedings consistent with this opinion.
The Petition for Certiorari is granted but the writ is withheld pending compliance with this opinion.
PETITION GRANTED.
GOSHORN, C.J., and COWART and HARRIS, JJ., concur.
NOTES
[1] See § 163.3167, Fla. Stat.
[2] See § 163.3177(6)(a), Fla. Stat.
[3] § 163.3177(6)(a), Fla. Stat.
[4] § 163.3177(5), Fla. Stat.
[5] Apparently someone did not understand that the initial recommendation of the P & ZD staff to the Planning and Zoning Board was based on an assumption or assertion that the property in question was within the 100 year flood plain and that the P & ZD staff had later concluded that assumption or assertion was "refuted", because during development, the elevation of the property in question could and would be raised sufficiently to remove the property from the 100 year flood plain elevation.
[6] Citing Sweetwater Utility Corp. v. Hillsborough County, 314 So.2d 194 (Fla. 2d DCA 1975); Town of Belleair v. Moran, 244 So.2d 532 (Fla. 2d DCA 1971); DeSisto College v. Town of Howey-in-the-Hills, 706 F. Supp. 1479, 1498 fn. 1 (M.D.Fla. 1989).
[7] City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982); Education Development Center, Inc. v. City of West Palm Beach Zoning Board of Appeals, 541 So.2d 106 (Fla. 1989). See also Combs v. State, 436 So.2d 93 (Fla. 1983).
[8] Neither party raises the issue of whether the circuit court should have reviewed the rezoning decision by certiorari review. See La Croix, "The Applicability of Certiorari Review to Decisions on Rezoning," 65 Fla. Bar Journal 105-108 (June, 1991).
[9] See Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).
[10] See U.S. Const. amendments V and XIV.
[11] U.S. Const. amendments V and XIV. Article I, section 2, Constitution of the State of Florida, provides that it is a basic right of all natural citizens to acquire, possess and protect property.
[12] In Village of Euclid, supra, the United States Supreme Court stated that, "The [zoning] ordinance now under review, and all similar laws and regulations, must find their justification in some aspect of the police power, asserted for the public welfare", 47 S.Ct. at 118, and recognized that the common law of nuisance provided an aid of analogies helpful in ascertaining the scope of the police power.
[13] "Property rights are among the basic substantive rights expressly protected by the Florida Constitution. Art. I, § 2, Fla. Const." Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla. 1991).
[14] See, e.g., Connecticut v. Doehr, ___ U.S. ___, 111 S.Ct. 2105, 2113, 115 L.Ed.2d 1 (1991) (ex parte prejudgment attachment of real estate authorized by statute violates due process principles).
[15] Only recently, a federal magistrate held a governing body must compensate a landowner whose property was refused rezoning because it was in the wetlands. Reahard v. Lee County, Case No. 89-227-Civ. (M.D.FL, Order dated January 16, 1991).
[16] In requiring local governments to adopt comprehensive plans the Florida legislature recognized that such land use regulations may constitute a compensable taking and recognized the constitutional "takings" clause by providing in section 163.3194(4)(a), Florida Statutes:

but property shall not be taken without due process of law and the payment of just compensation.
The State comprehensive plan provisions recognize the constitutional limitation in section 187.201(15), Florida Statutes, which provides that, "Florida shall protect private property rights and recognize the existence of legitimate and often competing public and private interests in land use regulations and other governmental action" and "encourages acquisition of lands by state and local government in cases where regulation will severely limit practical use of property." The scope of this question may soon be addressed by the United States Supreme Court which has granted certiorari review in Lucas v. South Carolina Coastal Council, 404 S.E.2d 895 (S.C. 1991), cert. granted, ___ U.S. ___, 112 S.Ct. 436, 116 L.Ed.2d 455 (U.S. Nov. 18, 1991).
[17] City of New Smyrna Beach v. Barton, 414 So.2d 542 (Fla. 5th DCA 1982) (the separate concurring opinion), rev. denied, 424 So.2d 760 (Fla. 1982) (rezoning is an executive act because it is the application of a general legislated rule of law to particular property).
[18] See, e.g., Colonial Apartments v. City of Deland, 577 So.2d 593 (Fla. 5th DCA 1991), rev. denied, 584 So.2d 997 (Fla. 1991) (city's action in denying approval of site plan is an administrative action); City of Melbourne v. Hess Realty Corp., 575 So.2d 774 (Fla. 5th DCA 1991) (city granting a conditional use permit is a quasi-judicial action (administrative)); Irvine v. Duval County Planning Commission, 466 So.2d 357 (Fla. 1st DCA 1985) (Zehmer, J. dissenting), dissent approved, 495 So.2d 167 (Fla. 1986), adopted after remand, 504 So.2d 1265 (Fla. 1st DCA 1986); Planning Commission of City of Jacksonville v. Brooks, 579 So.2d 270 (Fla. 1st DCA 1991) (in special exception cases commission functions in administrative manner).
[19] Rathkopf, The Law of Zoning and Planning, § 27A-4 (4th Ed. 1991).
[20] Id.
[21] Indeed, when Brevard County originally adopted zoning in 1958, it in essence zoned all property being used into nine categories or districts (agriculture, five residential categories, two business and one industrial). All land not then in use was placed in an interim district entitled "GU" (General Use) which permitted a very restrictive use to a single family dwelling. Currently there are some 29 categories or districts. Because each parcel of land can be in but one zoning category, and normally cannot be used for anything permitted in other categories, the more zoning categories that are created results in greater restriction on the use of land in each category.
[22] Rathkopf, supra, 27A-6.
[23] Rathkopf, supra, 27A-5.
[24] See Bailey v. City of St. Augustine Beach, 538 So.2d 50 (Fla. 5th DCA 1989), rev. denied, 545 So.2d 1366 (Fla. 1989); Flowers Baking Co. v. City of Melbourne, 537 So.2d 1040 (Fla. 5th DCA 1989), rev. denied, 545 So.2d 1366 (Fla. 1989); Porpoise Point Partnership v. St. Johns County, 532 So.2d 727 (Fla. 5th DCA 1988).
[25] See e.g., Porpoise Point.
[26] A "floating zone" is an ordinance creating a zoning classification authorized for future use but not placed on the zoning map until its use at a particular location is approved. See Fasano v. Board of County Commissioners, 264 Or. 574, 507 P.2d 23 (Ore. 1973).
[27] Peckinpaugh, "Burden of Proof in Land Use Regulation: A Unified Approach and Application to Florida," 8 F.S.U. Law Rev. 499 (1980).
[28] City of Miami Beach v. Lachman, 71 So.2d 148, 152 (Fla. 1953), appeal dismissed, 348 U.S. 906, 75 S.Ct. 292, 99 L.Ed. 711 (1955).
[29] City of Tampa v. Speth, 517 So.2d 786 (Fla. 2d DCA 1988).
[30] See, e.g., St. Johns County v. Owings, 554 So.2d 535, 537 (Fla. 5th DCA 1989), rev. denied, 564 So.2d 488 (Fla. 1990); Palm Beach County v. Tinnerman, 517 So.2d 699 (Fla. 4th DCA 1987), rev. denied, 528 So.2d 1183 (Fla. 1988).
[31] Indeed, Village of Euclid v. Ambler Realty Co., the 1926 United States Supreme Court decision originally upholding the constitutionality of comprehensive zoning plans, which involved a broad constitutional attack on the zoning ordinance, appears to recognize the distinction, indicating that while the ordinance as a whole could be valid, when the ordinance provisions

come to be concretely applied to particular premises, ... or to particular conditions, or to be considered in connection with specific complaints, some of them, or even many of them, may be found to be clearly arbitrary and unreasonable.
and that it is a different case where legal remedy is sought:
upon the ground of a present infringement or denial of a specific right, or of a particular injury in the process of actual execution ... [Emphasis added]
of the provisions of the zoning ordinance and that provisions upheld against a general attack
"if attacked separately, might not withstand the test of constitutionality." 47 S.Ct. at 121.
[32] See Standard Oil Co. v. City of Tallahassee, 183 F.2d 410, 414 (5th Cir.1950) (Hutcheson dissenting).
[33] See section 163.3177(6)(a), Florida Statutes.
[34] §§ 163.3161  163.3215, Fla. Stat. (1989).
[35] Mitchell, "In Accordance with a Comprehensive Plan: The Rise of Strict Scrutiny in Florida," 6 F.S.U. Journal of Environmental Law, 79 (1990). See, e.g., Southwest Ranches Homeowners Association v. County of Broward, 502 So.2d 931 (Fla. 4th DCA), review denied, 511 So.2d 999 (Fla. 1987), disagreed with by Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987), review denied, 529 So.2d 693 (Fla. 1988). See also Gilmore v. Hernando County, 584 So.2d 27 (Fla. 5th DCA 1991) (Sharp dissenting).
[36] Rathkopf, supra, 27A-20; City Commission of Miami v. Woodlawn Park Cemetery, 553 So.2d 1227 (Fla. 3d DCA 1989), rev. denied, 563 So.2d 631 (Fla. 1990).
[37] Broward County v. Griffey, 366 So.2d 869 (Fla. 4th DCA 1979); See discussion of this type of development, Rathkopf, supra 27A-32.
[38] See, e.g., Manatee County v. Kuehnel, 538 So.2d 52 (Fla. 2d DCA 1989), revised opinion, 542 So.2d 1356 (Fla. 2d DCA 1989) (wherein the court first held denial of rezoning decision was quasi-judicial reviewable by certiorari, then withdrew decision but in subsequent opinion did not offer basis for certiorari jurisdiction); Bailey v. City of St. Augustine Beach, 538 So.2d 50 (Fla. 5th DCA 1989), rev. denied, 545 So.2d 1366 (Fla. 1989) (no basis given for certiorari review in circuit court). See also La Croix, The Applicability of Certiorari Review to Decisions on Rezoning, 65 Fla. Bar Journal 105 (June 1991).
[39] See, e.g., First City Savings Corp. of Texas v. S. & B. Partners, 548 So.2d 1156, 1157 (Fla. 5th DCA 1989), rev. dismissed, 554 So.2d 1168 (Fla. 1989); Battaglia Fruit Co. v. City of Maitland, 530 So.2d 940, 942 (Fla. 5th DCA 1988), rev. dismissed, 537 So.2d 568 (Fla. 1988).
[40] See LaCroix, supra.
[41] Gilmore v. Hernando County, 584 So.2d 27 (Fla. 5th DCA 1991) (See Sharp dissenting).
[42] See the following for a critical analysis of this philosophy: Rathkopf, supra, 27A.04-27A.05; "Comment, Zoning Amendments  The Product of Judicial or Quasi-judicial Action," 33 Ohio St.L.J. 130 (1972); Booth, "A Realistic Reexamination of Rezoning Procedure": "The Complementary Requirements of Due Process and Judicial Review," 10 Ga.L.Rev. 753 (1976); Harris, "Rezoning Should It Be a Legislative or Judicial Function?", 31 Baylor L.Rev. 409 (1979).
[43] Fasano, 507 P.2d at 26.
[44] Id. at 27 (quoting "Comment Zoning Amendments  The Product of Judicial or Quasi-Judicial Action," 33 Ohio St.L.J. at 137).
[45] Id. at 28.
[46] Id. at 30.
[47] Rathkopf, supra, § 27A-33 through § 27A-43.
[48] Fleming v. City of Tacoma, 81 Wash.2d 292, 502 P.2d 327, 331 (1972).
[49] Cooper v. Bd. of County Comm'rs, 101 Idaho 407, 614 P.2d 947, 950-951 (1980).
[50] Golden v. City of Overland Park, 224 Kan. 591, 597, 584 P.2d 130, 135 (1978).
[51] Dist. of Columbia Administrative Procedure Act.
[52] Board of Supervisors v. Snell Const. Corp., 214 Va. 655, 202 S.E.2d 889 (1974).
[53] Forman v. Eagle Thrifty Drugs and Markets, 89 Nev. 533, 516 P.2d 1234, 1236 (1973).
[54] Ward v. Village of Skokie, 26 Ill.2d 415, 186 N.E.2d 529, 533 (1962) (Klingbiel, J. concurring).
[55] Town v. Land Use Commission, 55 Hawaii 538, 524 P.2d 84 (1974).
[56] Margolis v. District Court, 638 P.2d 297, 303-305 (Colo. 1981) (rezoning is subject to quasi-judicial review but is legislative so is subject to referendum).
[57] Schanz v. City of Billings, 182 Mont. 328, 597 P.2d 67, 71 (1979) (rezoning is a legislative act but rezonings should still be reviewed for facts and findings).
[58] Machado v. Musgrove, 519 So.2d 629, 632 (Fla. 3d DCA 1987); City of Jacksonville Beach v. Grubbs, 461 So.2d 160, 162, 163 (Fla. 1st DCA 1984), rev. denied, 469 So.2d 749 (Fla. 1985); see also Hirt v. Polk County Bd. of County Comm'rs, 578 So.2d 415 (Fla. 2d DCA 1991) (whether commission's action is legislative or quasi-judicial should be determined by 1) nature of petitioner's challenge; and 2) the manner in which board went about making its decision).
[59] Machado at 632.
[60] The functional difference between amendments to zoning ordinances and comprehensive planning maps, which constitutes legislative action, and decisions made in individual zoning application cases and the recording of those decisions in minutes of meeting (rather than an ordinance change) and on actual zoning maps, which is non-legislative action, is reminiscent of the difference between planning-level, policy-making, decisions for which government has sovereign immunity from tort liability and negligence during the executions or applications of the planning level decisions for which it does not have sovereign immunity. See e.g., Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979); Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965).
[61] For cases challenging rezonings as inconsistent with comprehensive plan, see Gilmore v. Hernando County, 584 So.2d 27 (Fla. 5th DCA 1991); City of Cape Canaveral v. Mosher, 467 So.2d 468 (Fla. 5th DCA 1985). See also Helfman and McDowell, "Consistency after Machado," 63 Fla.Bar Journal 67 (Feb. 1989); McPherson, "Cumulative Zoning and the Developing Law of Consistency with Local Comprehensive Plans." 61 Fla.Bar Journal 71 (Aug. 1987).
[62] The legislated rule of law is the general zoning ordinance enacting a comprehensive plan composed of policy statements and recommendations, measurable objectives, categories of land classification and degrees of densities and intensities of use, standards, factors (elements) to be considered, procedures and the proposed distribution, location and extent of various categories of land use shown on general comprehensive planning land use maps, see section 163.3177(5) and (6)(a), Florida Statutes. City of New Smyrna Beach v. Barton, 414 So.2d at 542 (the separate concurring opinion).
[63] Fasano, supra.
[64] The proof of conformity of the zoning action to the land use plan "must be discernible to a reviewing court on a verbatim record." Machado v. Musgrove, supra.
[65] See, e.g., DeGroot v. Sheffield, 95 So.2d 912 (Fla. 1957); Hirt v. Polk County Board of County Comm'rs, supra; Planning Commission of City of Jacksonville v. Brooks, 579 So.2d 270 (Fla. 1st DCA 1991); Irvine v. Duval County Planning Commission, 466 So.2d 357 (Fla. 1st DCA 1985) (Zehmer, J. dissenting), approved, 495 So.2d 167 (Fla. 1986), adopted after remand, 504 So.2d 1265 (Fla. 1st DCA 1986).
[66] See Irvine, 466 So.2d at 360; Planning Commission of City of Jacksonville v. Brooks, supra.
[67] See Irvine, 466 So.2d at 365.
[68] Ordinances and statutes give certain classes of persons the right to oppose rezoning requests by landowners. However, neither such objectors nor the governmental zoning authority has a constitutional right to prevent a private landowner from enjoying his constitutionally protected right to own and use private property. Therefore, all presumptions should be in favor of the correctness of a decision granting a landowner's request for rezoning and that decision should be upheld by the courts if "fairly debatable."
[69] Or alternatively, if asserted, that the comprehensive zoning plan as applied to his land is unconstitutional, unlawful, arbitrary, unreasonable, or confiscatory, or facially constitutes a governmental compensable taking.
[70] The government has the burden of proof by clear and convincing evidence before it may impinge constitutionally protected property rights. See Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla. 1991) (wherein the supreme court adopted clear and convincing standard before government may take individual's property in forfeiture proceeding). See also Padgett v. Department of Health & Rehab. Servs., 577 So.2d 565 (Fla. 1991) (clear and convincing evidence required for termination of parental rights); In re Guardianship of Browning, 568 So.2d 4 (Fla. 1990) (clear and convincing evidence required before a surrogate can exercise an incompetent patient's right to terminate life support); In re Bryan, 550 So.2d 447 (Fla. 1989) (clear and convincing evidence required to deprive an individual of basic property rights through a determination of incompetency); Nodar v. Galbreath, 462 So.2d 803, 806 (Fla. 1984) (public official or public figure must prove actual malice by clear and convincing evidence to impinge on first amendment rights in a defamation suit); Downing v. Bird, 100 So.2d 57, 64 (Fla. 1958) (in adverse possession cases, the claimant must show "by clear, definite and accurate proof" that the adverse possession of property continued for the full period required by Florida law).