Ms. Cynthia Prettyman General Counsel Palm Beach County School District 3318 Forest Hill Boulevard West Palm Beach, Florida 33406
Dear Ms. Prettyman:
On behalf of the School District of Palm Beach County you have asked for my opinion on substantially the following question:
May a bidder or proposer on school district requests for proposal or requests for bids lobby or communicate with school board members who will vote to accept the bid or proposal for goods or services?
In sum:
The purchasing procedures of the School District of Palm Beach County are not quasi-judicial in nature and, in the absence of a policy relating to such contact, a bidder or proposer may communicate with school board members without the necessity of complying with the increased procedural protections required byJennings v. Dade County[1] and Board of County Commissioners ofBrevard County v. Snyder.[2] However, in the event the school district decides to abandon its current policy on ex parte
communications, it may be advisable for the school district to adopt a policy such as that provided in section 286.0115, Florida Statutes, establishing disclosure procedures for communications between school board members and lobbyists.
According to your letter, the School District of Palm Beach County currently has a policy prohibiting ex parte communication with school district personnel who may be involved with a bid or request for proposal (RFP). The policy also provides that
"Board Members shall not be lobbied by any bidder(s) or individual(s) on behalf of a bidder (bid). Lobbying Board Members will result in rejection/disqualification of said Bid/RFP."
The school district originally adopted this policy following the decisions in Jennings v. Dade County, 589 So.2d 1337 (Fla. 3d DCA 1991), rev. den., 598 So.2d 75 (Fla. 1992), and Snyder v. Boardof County Commissioners of Brevard County, 595 So.2d 65 (Fla. 5th DCA 1991).
The school district is now considering amending this policy to allow lobbyists for bidders or proposers to engage in ex parte
communications with school board members until the time the board votes on the award of a contract. You ask whether the award of bids or proposals by the school board is a quasi-judicial proceeding within the scope of these considerations, making an amendment of the school board policy appropriate.
In determining whether actions are legislative or quasi-judicial, the Supreme Court of Florida in Board of County Commissioners ofBrevard County v. Snyder[3] looked to the nature of the hearing involved in such activities. In Snyder, the Court stated:
"It is the character of the hearing that determines whether or not board action is legislative or quasi-judicial. Generally speaking, legislative action results in the formulation of a general rule of policy, whereas judicial action results in the application of a general rule of policy."[4]
In developing a test to distinguish judicial or quasi-judicial acts from those that are quasi-legislative or administrative, the Court quoted from a 1935 case:
"A judicial or quasi-judicial act determines the rules of law applicable, and the rights affected by them, in relation to past transactions. On the other hand, a quasi-legislative or administrative order prescribes what the rule or requirement of administratively determined duty shall be with respect to transactions to be executed in the future, in order that same shall be considered lawful. But even so, quasi-legislative and quasi-executive orders, after they have already been entered, may have a quasi-judicial attribute if capable of being arrived at and provided by law to be declared by the administrative agency only after express statutory notice, hearing and consideration of evidence to be adduced as a basis for the making thereof."[5]
Where a governmental entity's actions are quasi-judicial, the courts have recognized that certain procedural safeguards must be met. In Jennings v. Dade County,[6] a case decided prior toSnyder, the court held that in a quasi-judicial rezoning hearing certain standards of basic fairness must be followed in order to afford the parties due process. A quasi-judicial hearing generally meets due process requirements if the parties are provided notice of the hearing and an opportunity to be heard. In quasi-judicial rezoning proceedings the parties must be able to present evidence, cross-examine witnesses, and be informed of all the facts upon which the commission acts.[7] Thus, the court determined that exparte communications are inherently improper under these circumstances and quasi-judicial officers should avoid all such contacts where they are identifiable.
The decisions in Snyder and Jennings arose in the context of rezoning proceedings and, therefore, the conclusions in those cases would clearly be applicable when a governmental body is exercising such a function. It is not readily apparent, however, that the conclusions in these cases were meant to apply to all functions where a local governmental entity applies a general rule of policy.[8]
To date, the Snyder holding has only been applied by the courts when considering land uses affecting a particular piece of property.[9] While the Snyder case contains broad language that could be applied to numerous governmental activities that seek to implement government policies affecting an individual's property, neither the courts nor this office has read these cases in such an expansive manner.[10]
You have included a copy of the procurement department purchasing procedures of the school district. Under these procedures the Coordinator of Procurement is responsible for the purchase of materials, equipment, and services for the district.[11] When an item or group of similar items exceeding $10,000 in value is required, bids or requests for proposal (RFPs) must be requested from three or more sources. Forms or card notices for bids or RFPs are sent to all vendors on the active vendor mailing list for that category of required goods or services. When the total amount of a purchase does not exceed $10,000, the department's purchasing procedures authorize the Coordinator of Procurement to approve or reject the purchase; if the purchase is in excess of $10,000, it must be approved by the school board with certain limited exceptions.
The department's procedures require that
"all bids/RFPs shall be publicly opened, and the name of the bidder read aloud, by a designated member of the Procurement staff, bids/RFPs will be evaluated, tabulated, posted in the Procurement Department and an award recommendation will be submitted by the Superintendent to the Board."[12]
Thus, the board receives a recommendation for award of the bid or RFP from the school superintendent.
The department's procedures further require that
"[t]he School Board . . . accept the lowest and best bid from a responsive and responsible bidder and/or in accordance with District's M/WBE Policy (minority/women vendors policy). . . . The Board shall have the authority to reject any and all bids/proposals and request new bids/proposals."[13]
The School Board's policy also addresses bid protests. A bidder or offeror who is adversely affected by the award of a contract or by the specifications of an invitation to bid or a request for proposal may file a written notice of protest within seventy-two hours after the posting of the bid tabulation or within seventy-two hours after receipt of specifications in an invitation to bid or request for proposals. This notice must be directed to the Coordinator of Procurement.[14] The Coordinator of Procurement must provide an opportunity for the parties to resolve the bid protest by mutual agreement within seven working days of receipt of the notice of protest.[15] If the protest is not resolved, the aggrieved party may file a formal written request for an administrative hearing under Florida's Administrative Procedure Act, Chapter 120, Florida Statutes.
The involvement of the school board in the competitive bidding process outlined above appears to be minimal. The board is required to accept the lowest and best bid. The bids and RFPs are evaluated, tabulated, and posted by staff of the procurement department and the superintendent of schools presents an award recommendation to the board. I would note that the current school board policy states:
"District personnel related to or involved with bid/RFP shall not be lobbied by any bidder(s) or individuals(s) on behalf of a bidder (bid). Lobbying district personnel will result in rejection/disqualification of said bid/RFP."[16]
There is no indication in your letter that the prohibition againstex parte communications with staff is to be discontinued. Rather, the district would like to remove the prohibition as it applies to elected school board members so that they may be more responsive to their constituents.
The foregoing procedures do not, in my opinion, rise to the level of quasi-judicial activities subject to the increased procedural protections required by Jennings and Snyder. In light of the nature of the decision-making being done and the clear strictures on how such choices are made, it appears that this is primarily an administrative function of the board rather than a quasi-judicial one.
Therefore, it is my opinion that the purchasing procedures of the School District of Palm Beach County are not quasi-judicial in nature and, in the absence of a policy relating to such contact, a bidder or proposer may communicate with school board members without the necessity of complying with the increased procedural protections required by Jennings v. Dade County and Board ofCounty Commissioners of Brevard County v. Snyder.[17]
It may be advisable, however, in light of the rationale for the adoption of the current policies against ex parte communications, for the school board to consider adopting a plan, such as that described in section 286.0115, Florida Statutes, to report communications by bidders or proposers with school board members regarding competitive bids if it determines to abandon its policy prohibiting ex parte communications. This statute removes the presumption of prejudice from ex parte communications with local public officials by establishing a process for the public disclosure of these communications. If adopted by the school board, such a policy would reassure the public that communications between school board members and individual bidders or proposers do not violate the Government in the Sunshine Law, section286.011, Florida Statutes; the Code of Ethics for Public Officers and Employees, Part III, Chapter 112, Florida Statutes; or other statutes regulating the conduct of the public's business.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] 589 So.2d 1337 (Fla. 3d DCA 1991).
[2] 627 So.2d 469 (Fla. 1993).
[3] Id.
[4] Supra n. 2 at 474.
[5] Snyder, supra n. 2, citing West Flagler Amusement Co. v.State Racing Commission, 165 So. 64, 65 (Fla. 1935).
[6] 589 So.2d 1337 (Fla. 3d DCA 1991).
[7] Id. at 1340-1341, citing Coral Reef Nurseries, Inc. v.Babcock Company, 410 So.2d 648, 652 (Fla. 3d DCA 1982).
[8] Cf., section 286.0115(1)(a), Florida Statutes, which provides:
"A county or municipality may adopt an ordinance or resolution removing the presumption of prejudice from ex parte communications with local public officials by establishing a process to disclose ex parte communications with such officials pursuant to this subsection or by adopting an alternative process for such disclosure. However, this subsection does not require a county or municipality to adopt any ordinance or resolution establishing a disclosure process."
The Florida Legislature adopted this statute in 1995 to deal with the problems presented by the Jennings case for local elected public officials. In adopting section 286.0115, Florida Statutes, the Legislature expressed its concern that
"local elected public officials have been obstructed or impeded from the fair and effective discharge of their sworn duties and responsibilities due to expansive interpretations of Jennings v. Dade County, a decision rendered by the Third District Court of Appeal[.]"
See, Preamble to Chapter 95-352, Laws of Florida.
However, it is clear that the statute authorizes counties and municipalities to regulate access to local public officials only
when they are dealing with local government land use matters.
[9] See, e.g., City of Melbourne v. Puma, 630 So.2d 1097 (Fla. 1994), in which the Court applied the Snyder reasoning to find that an amendment to the comprehensive plan coupled with rezoning of a particular piece of property constituted quasi-judicial activities. See also, Fleeman v. City of St. Augustine Beach,728 So.2d 1178 (Fla. 5th DCA 1998), cert. granted.
[10] See, e.g., Op. Att'y Gen. Fla. 95-22 (1995), and 92-48 (1992), and cases cited therein.
[11] Policy 6.14(1), School Board of Palm Beach County Procurement Department Purchasing Procedures.
[12] Policy 6.14(4), id.
[13] Policy 6.14(5), supra at n. 11.
[14] Policy 6.14(7), supra at n. 11.
[15] Policy 6.14(7)(a), supra at n. 11.
[16] Policy 6.14(5), supra at n. 11.
[17] See, In re Advisory Opinion to the Governor — School BoardMember — Suspension Authority, 626 So.2d 684 (Fla. 1993), in which the Florida Supreme Court determined that a district school board member is a county officer for certain purposes.