608 So.2d 59 (1992)
ABG REAL ESTATE DEVELOPMENT COMPANY OF FLORIDA, INC., a Florida Corporation, Petitioner,
v.
St. JOHNS COUNTY, Florida, etc., Respondent.
No. 92-1297.
District Court of Appeal of Florida, Fifth District.
September 25, 1992.
Rehearing Denied November 13, 1992.
*60 Terry A. Moore, Sidney F. Ansbacher and Robert M. Murphy, Brant, Moore, Sapp, MacDonald & Wells, P.A., Jacksonville, for petitioner.
James G. Sisco, County Atty. and Linda R. Hurst, Asst. County Atty., St. Augustine, for respondent.
COBB, Judge.
This petition for writ of common law certiorari seeks review of the circuit court acting in its appellate capacity in a zoning matter. The circuit court's order upheld a decision of the St. Johns Board of County Commissioners ("Board"), which denied an application by ABG Real Estate Development Company of Florida ("ABG") to modify a final development plan for a commercial village within a Planned Unit Development ("PUD").
In 1986, the Board approved a final development plan for Sawgrass Village, a commercial area (shopping center) which includes the site herein at issue. It is agreed that a McDonald's restaurant is a "permitted use by exception" at the proposed *61 site. Therefore, denial of the application required a finding by the Board that the proposed restaurant would be contrary to public health, safety or welfare. ABG already had been allocated commercial retail space under the PUD, and the modification would have permitted it to relocate that space within the shopping complex so as to allow development of the restaurant in an area previously designated as "future parking." In exchange for the relocation space, ABG offered to relinquish 7,325 square feet of its remaining unused commercial development rights under the PUD.
The Planning and Zoning Advisory Board ("PZAB") considered ABG's application at a public hearing and denied the application. The resolution of denial found that the request was "contrary to public health, safety and welfare and incompatible with the neighborhood in that development... ." The St. Johns County Planning and Zoning Department ("Staff") issued its report and recommendations to the Board after the PZAB decision. The Staff report supported approval of ABG's application without making an outright recommendation. The report found that the reduction in total square footage which ABG proposed would negate any traffic increase created by the fast food restaurant. The report went on to say that the PUD development order did not appear to preclude the applicant's request:
[T]he original PUD Ordinance 75-15 stated that the Sawgrass Village Center `shall be developed under the CG district regulations,' and ... the Board of County Commissioners has previously interpreted (i.e., Jax Liquors) that the PUD permitted all CG uses including those by exceptions, including fast food or drive-in restaurants.
The Staff report noted that there did not appear to be substantial evidence that a fast food establishment would be detrimental to the public welfare; on the contrary, such a restaurant would provide supportive service to lower income personnel of the shopping center and visitors. Accompanying the report was a Traffic Impact Analysis prepared for the applicant by a Jacksonville corporation. It mentioned that Sawgrass Village already included a Publix, an Eckerds, an ABC/Jax Liquors with a drive-through lane, a bank with three drive-through lanes, two restaurants, retail stores, and professional offices. The analysis concluded that, based on square footage measurements, traffic counts, and projections of future traffic volumes, the requested location of the McDonald's restaurant would produce no greater traffic impact than if the shopping center were completed with retail stores only. A Traffic Impact Review prepared by the County's Transportation Planner found that acceptable levels of service would continue if the McDonald's restaurant were built.
The matter then moved to the Board on appeal from the PZAB denial, and the Board held a public hearing. At that hearing, local residents voiced generalized complaints regarding increased traffic, declination of property values, noise, litter and aesthetic concerns. However, no specific evidence was offered to support these apprehensions. Nevertheless, the Board unanimously upheld the PZAB's denial of the application "on the basis of incompatibility with the neighborhood and that it seriously interferes with the health, safety and welfare of the people in the community." The Board made no findings of fact and gave no additional reasons for upholding the denial. In a lengthy order, the circuit court denied ABG's petition for certiorari review, and the instant petition for review was filed with this court.
The controlling case is Snyder v. Board of County Commissioners of Brevard County, Florida, 595 So.2d 65 (Fla. 5th DCA 1991), wherein we emphasized the requirement that a zoning authority must produce clear and convincing evidence in order to defeat a landowner's prima facie showing of entitlement to a particular use of his land. In that case the landowner sought to rezone a parcel of "general use" land to a "medium density multiple-family dwelling" zoning classification. The Zoning Department staff found that the rezoning application was consistent with the Brevard County Comprehensive Plan and Future Land Use Designation and was not *62 objectionable for other reasons, but denied the application because the rezoning would create a density greater than that allowed in the 100-year flood plain. The Planning and Zoning Board subsequently recommended approval when it was shown that the area was not within the flood plain. After a public hearing, however, the Board of County Commissioners denied the zoning request without giving any reason.
The landowners then filed a petition for writ of certiorari in the circuit court, alleging that the rezoning was consistent with the County Comprehensive Zoning Plan and that its denial was arbitrary and unreasonable. In its response, the County did not argue that the denial was proper because the subject land was in a flood plain or that the rezoning application was inconsistent with the Comprehensive Plan, but instead rather summarily stated that the existing general use zoning was consistent with the Comprehensive Plan and the denial of the rezoning was proper. Just as in this case, the circuit court in Snyder denied the petition, and the landowners filed a petition for writ of certiorari in this court, arguing that the circuit court had departed from the essential requirements of law in failing to require the County Commission to make findings of fact and give reasons for disapproving the rezoning application.
The Snyder opinion stated that when the rezoning question was before the Commission, the burden was on the landowners initially to present a prima facie case that the application for use of privately owned land complied with the reasonable procedural requirements of the zoning ordinance and with the applicable Comprehensive Zoning Plan. ABG's application complied with the procedural requirements in the instant case, and no one has ever argued that the modification sought would conflict in any way with the Comprehensive Zoning Plan.
The circuit court's order in this case indicates a misunderstanding of Snyder when it says:
There is no necessity to have PUD, if major modifications as here found by the court can be readily available to the owner, upon a mere prima facie showing of the desired change being consistent with existing usage.
Pursuant to Snyder, after ABG had presented a prima facie case, the burden shifted to the zoning authority to prove by clear and convincing evidence that a specifically stated public necessity required a more restrictive use. Moreover, Snyder placed the burden on the zoning authority to assure that an adequate record of this evidence is prepared. Judicial review of quasi-judicial actions denying or abridging landowners' constitutionally protected rights to use of their land should involve close judicial scrutiny of this record.
Here, the record fails to show clear and convincing evidence of any public necessity which would justify restricting the owner's use of his land. Although an adverse traffic impact attributable to the proposed McDonald's restaurant initially may have been a concern, the staff report is strong evidence that the addition of the McDonald's would not significantly increase traffic already generated by the shopping center alone. The circuit court apparently did not recognize that "clear and convincing" evidence of some public necessity was required to overcome ABG's prima facie case. Moreover, the court did not even find that there was "competent substantial evidence" to support the Board's decision, a standard required by cases preceding Snyder. Educ. Dev. Center, Inc. v. City of West Palm Beach Zoning Bd. of Appeals, 541 So.2d 106 (Fla. 1989); BML Inv. v. City of Casselberry, 476 So.2d 713 (Fla. 5th DCA 1985), rev. den., 486 So.2d 595 (Fla. 1986). In addition, there was no compliance with Snyder's mandate that a zoning agency
must state reasons for action that denies the owner the use of his land and must make findings of fact and a record of its proceedings, sufficient for judicial review of: the legal sufficiency of the evidence to support the findings of fact made, the legal sufficiency of the findings of fact supporting the reasons given and the legal adequacy, under applicable law (i.e., under general comprehensive zoning ordinances, *63 applicable state and case law and state and federal constitutional provisions) of the reasons given for the result of the action taken.
Snyder at 81. The Board in the instant case made no findings of fact, oral or written; it offered only a vague statement that the requested modification would be incompatible with the neighborhood and that "the proposed use seriously interferes with the health, safety, and welfare of the people in the community."
In Snyder we found that the landowners had met their burden of proving that their proposed use was consistent with the county ordinance and that the Commission had not met its burden of proving by clear and convincing evidence that a public necessity This court therefore concluded that "the petitioning landowners were entitled to the zoning classification sought and its denial without written reasons supported by facts was, as a matter of law, arbitrary and unreasonable and judicially reviewable and reversible." Snyder at 81.
The circuit court's apparent use in the instant case of a "fairly debatable" standard was clearly erroneous. The "fairly debatable" standard is used only for the review of legislative-type enactments of zoning ordinances, and not acts of a judicial or quasi-judicial nature such as those involved in the instant case (the granting of exceptions or variances). See Snyder; Bernard v. Town Council of Palm Beach, 569 So.2d 853 (Fla. 4th DCA 1990) (proper standard of review of a variance decision is whether there was competent substantial evidence to support the agency's determination, and not a "fairly debatable" standard); Metro. Dade County v. Betancourt, 559 So.2d 1237 (Fla. 3d DCA 1990); Town of Indialantic v. Nance, 400 So.2d 37 (Fla. 5th DCA 1982), aff'd, 419 So.2d 1041 (Fla. 1982).
The problems inherent in the circuit court's reasoning are further spotlighted by the following paragraph taken from its order:
If the case under review ... involved the mere shift within a commercially zoned area, no basis could be sustained by the governing agency to deny the request. McDonald's is certainly no more or less of an impact than Publix, the bank, a liquor store or restaurant. Under that circumstance the owner should prevail.
Those words are, in effect, an affirmation that ABG was entitled to the "mere shift within a commercially zoned area"  which is what it requested in the first place. We remind the trial court that:
A zoning authority's insistence on considering the owner's specific use of a parcel of land constitutes not zoning but direct governmental control of the actual use of each parcel of land which is inconsistent with constitutionally guaranteed private property rights.
Porpoise Point Partnership v. St. Johns County, 470 So.2d 850, 851 (Fla. 5th DCA 1985).
In summary, the property owner presented a prima facie case that the requested use of its land was consistent with the County's Comprehensive Plan and complied with the procedural requirements of the zoning ordinance. All conceded that the requested modification was a permitted use by exception. The prima facie case is shown not only by the application and the existing ordinances, but also by the staff report and by the undisputed finding of the PZAB that there was no conflict with the Comprehensive Plan. The burden then shifted to the zoning authority to show, based on clear and convincing evidence shown by an adequate record, that a specifically stated public necessity required a more restrictive use. See Snyder at 80, 81. The parties appear to agree on the "health, safety and welfare" standard for granting or denying the requested exception, but the mere parroting of this standard, without sufficient specific reasons supported by findings of fact, is "as a matter of law, arbitrary and unreasonable and judicially reviewable and reversible." Snyder at 82.
Because the Board's decision was arbitrary and unreasonable, and because the circuit court applied incorrect law to *64 approve the Board's decision, we grant ABG's petition for certiorari, and quash the order of the circuit court. However, we cannot grant ABG's request that we direct the Board to grant ABG's application. A court's certiorari review power does not extend to directing that any particular action be taken, but is limited to quashing the order reviewed. See City of Miramar v. Amoco Oil Company, 524 So.2d 506 (Fla. 4th DCA 1988); Gulf Oil Realty Co. v. Windover Ass'n, 403 So.2d 476 (Fla. 5th DCA 1981).
PETITION FOR CERTIORARI GRANTED; ORDER OF CIRCUIT COURT QUASHED.
GOSHORN, C.J., concurs.
W. SHARP, J., concurs in result only.