690 So.2d 700 (1997)
Cheryl L. DEBES, as Trustee, Petitioner,
v.
The CITY OF KEY WEST, Respondent.
No. 96-2451.
District Court of Appeal of Florida, Third District.
April 2, 1997.
Mattson & Tobin and Andrew M. Tobin, Key Largo, for petitioner.
*701 Mark Graham Hanson, for respondent.
Before SCHWARTZ, C.J., and COPE and FLETCHER, JJ.
SCHWARTZ, Chief Judge.
The petitioner is the owner of undeveloped land on North Roosevelt Boulevard in Key West. The parcel is in the center of what is specifically designated in the city's Comprehensive Plan as a primary commercial area and is, in fact, surrounded in all directions and on both sides of the street by property which is both zoned and used for commercial purposes. Notwithstanding, the Key West City Commission three times denied[1] an application initiated by its own City Planner,[2] and approved by the Planning Board, to amend the designation of the property on the Future Land Use Map (FLUM) from Medium Density Residential (MDR) to Commercial General (CG)[3] so as to permit the construction of a shopping center. On this petition for certiorari review of a circuit court decision which upheld the last denial, we conclude that, as a matter of law, "the refusal to rezone the property [was] arbitrary, discriminatory [and] unreasonable." Board of County Comm'rs v. Snyder, 627 So.2d 469, 476 (Fla.1993).
Almost without more, this brief recitation of the characteristics of the area and of the petitioner's particular situation clearly establish that singling out her property alone for disparate treatment represents a wholly impermissible instance of discriminatory spot zoningor, in this context, spot planningin reverse. Tollius v. City of Miami, 96 So.2d 122 (Fla.1957); City Commission v. Woodlawn Park Cemetery Co., 553 So.2d 1227 (Fla. 3d DCA 1989), review denied, 563 So.2d 631 (Fla.1990); City of Coral Gables v. Wepman, 418 So.2d 339 (Fla. 3d DCA 1982), review denied, 424 So.2d 760 (Fla.1982); Olive v. City of Jacksonville, 328 So.2d 854 (Fla. 1st DCA 1976); City of South Miami v. Hillbauer, 312 So.2d 241 (Fla. 3d DCA 1975); City of Miami v. Schutte, 262 So.2d 14 (Fla. 3d DCA 1972); see Parking Facilities, Inc. v. City of Miami Beach, 88 So.2d 141 (Fla. 1956)(spot zoning); County of Brevard v. Woodham, 223 So.2d 344 (Fla. 4th DCA 1969)(same), cert. denied, 229 So.2d 872 (Fla. 1969); 7 Fla.Jur.2d Building, Zoning, & Land Controls § 110, at 512 (1978).
The city contends, however, that its action is justified by (a) "substantial, competent evidence," Snyder, 627 So.2d at 475,[4] before the Commission that commercial zoning of the petitioner's parcel would result in increased traffic and (b) a desire to encourage the building of "affordable housing" in the city a result which would in effect be mandated by the MDR designation because it excludes commercial or office use. Neither position has a semblance of merit.
1. Traffic Increase No Justification. Because it is virtually self-evident that, by its very nature, all commercial uses create "more traffic" than non-commercial ones, it is equally obvious that local government cannot *702 justify a denial of a particular commercial use on this ground. To hold otherwise would mean, as it apparently did in the proceedings before the Commission, that the protectable rights of any owner may be arbitrarily destroyed. This is not, and we will not let it be, the law. Tollius, 96 So.2d at 122 (change in neighborhood to commercial use requires restrictions for residential use to be relaxed).
Indeed, the Commission's actions in this case involve almost every one of the several bases upon which courts both here and elsewhere have rejected the contention that a potential traffic increase may support the denial of otherwise required commercial zoning. 5 Rathkopf's The Law of Zoning & Planning § 59.03 (4th ed. 1996), and cases collected at § 59.03[3] (denial of commercial use unjustified by showing merely of a "generalized increase in traffic due to an increase in intensity of use"); § 59.03[4]("a desire to prevent an undesirable increase in traffic congestion is not sufficient justification for the retention of an unsuitable or unreasonable zoning classification"); § 59.03[5] ("[z]oning classifications and permit decisions based on a desire to avoid increased traffic congestion may be held invalid where such action involves unreasonable discrimination between neighboring tracts or similar uses"; citing Florida Mining & Materials Corp. v. Port Orange, 518 So.2d 311 (Fla. 5th DCA 1987) (reversing denial of special permit to construct cement plant based on fact that cement trucks would pass through residential area, when trucks from other, similar businesses were permitted to do so), review denied, 528 So.2d 1181 (Fla.1988)); § 59.03[6] ("[z]oning classification or restrictions based on traffic conditions may be held invalid ... where land is uniquely burdened to extract a public benefit as a substitute for proper traffic management and control").
As the petitioner correctly argues, the traffic problems which may or may not be presented by her proposed commercial development of the property are properly considered in the administrative process which the city has itself established. See 5 Rathkopf's The Law of Zoning & Planning § 59.03[1], [3]. Generalized fears of an increase in traffic are wholly inappropriate, however, to deny any one landowner the rights to which he is entitled.
2. Promotion of Affordable Housing No Justification. The claim that the city's action may be justified as promoting the creation of adequate housing is, if anything, even more obviously deficient. While this aim may represent a desirable public policywhich might support, for example, the condemnation of property for that use, see State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla.1980)it emphatically may not be promoted on the back of a private landowner by depriving him of the constitutionally protected use of his property. As the estimable Judge Cowart correctly and succinctly stated:
A property owner is entitled to have his property properly zoned based on proper zoning concepts without regard to the one particular use which the owner might then intend to make of the various uses permitted under a proper zoning classification. A zoning authority's insistence on considering the owner's specific use of a parcel of land constitutes not zoning but direct governmental control of the actual use of each parcel of land which is inconsistent with constitutionally guaranteed private property rights.
Porpoise Point Partnership v. St. Johns County, 470 So.2d 850, 851 (Fla. 5th DCA 1985); accord ABG Real Estate Dev. Co. v. St. Johns County, 608 So.2d 59, 63 (Fla. 5th DCA 1992), cause dismissed, 613 So.2d 8 (Fla.1993).
In sum, the record reflects that the only reason for the denial of the proposed rezoning was that the oppositionof the city's existing merchants to the competition represented by the prospective commercial use of the property and of those who wanted more housinghad the votes. We reiterate, however, what was said in the reverse situation presented by a city's approval of an unjustified zoning change in Allapattah Community Ass'n v. City of Miami, 379 So.2d 387, 394 (Fla. 3d DCA 1980), cert. denied, 386 So.2d 635 (Fla.1980):
The [courts] ... will not and cannot approve a zoning regulationor any governmental action adversely affecting the *703 rights of otherswhich is based on no more than the fact that those who support it have the power to work their will.
Accord, e.g., Town of Ponce Inlet v. Rancourt, 627 So.2d 586, 588 n. 1 (Fla. 5th DCA 1993); City of Apopka v. Orange County, 299 So.2d 657 (Fla. 4th DCA 1974).
For these reasons, we conclude that the circuit court decision so fundamentally and seriously departs from the controlling law that a miscarriage of justice has resulted and that review on certiorari is therefore both justified and required. Haines City Community Dev. v. Heggs, 658 So.2d 523 (Fla. 1995); Snyder, 627 So.2d at 469; Metropolitan Dade County v. Blumenthal, 675 So.2d 598 (Fla. 3d DCA 1995), review dismissed, 680 So.2d 421 (Fla.1996); ABG, 608 So.2d at 59. Upon that review, the decision is quashed and the cause remanded with directions to require the City Commission to grant the application in question.
Certiorari granted.
NOTES
[1] The two previous denials were both quashed on review by the circuit court. Our disposition of the present case makes it unnecessary directly to consider the petitioner's very substantial contention that at least the first of these rulings entitles her to relief under the doctrine of res judicata.
[2] The application stemmed from the professionals' desire to correct what they characterized as their own "mistake" in their designating the parcel as MDR because, at that time, a plan had been submitted to build a residential development on the parcel. In the event, the proposal proved financially unworkable and failed entirely.
[3] CG permits commercial, office and residential use. MDR permits residential use.
[4] While we agree that Snyder provides the appropriate standard of review, see Snyder 627 So.2d at 469; City of Ft. Lauderdale v. Multidyne Medical Waste Management, Inc., 567 So.2d 955 (Fla. 4th DCA 1990), review denied, 581 So.2d 165 (Fla.1991), the issue is not determinative or even important in our consideration of the case. As we suspect is very often the case, the application of any possible formulation of the showing necessary either to support or to overturn a local government's decision of the present kind, including the "fairly debatable" standard deemed appropriate in Martin County v. Yusem, ___ So.2d ___ (Fla. Case No. 87,078, opinion filed, March 27, 1997)[22 FLW S156]; e.g., Allapattah Community Ass'n v. City of Miami, 379 So.2d 387 (Fla. 3d DCA 1980), cert. denied, 386 So.2d 635 (Fla.1980), would yield the same result. See Metropolitan Dade County v. Fuller, 515 So.2d 1312, 1314 n. 4 (Fla. 3d DCA 1987).