LAGOA, J.
 

 Palmer Trinity Private School, Inc. (hereinafter “Palmer Trinity”) seeks second tier certiorari review of a circuit court appellate division decision affirming the Village of Palmetto Bay’s (the “Village”) decision to deny Palmer Trinity’s application to rezone its property. Because the appellate division’s decision is a departure from the essential requirements of law resulting in a miscarriage of justice, we grant the petition.
 

 I.
 
 FACTUAL AND PROCEDURAL HISTORY
 

 Palmer Trinity owns two adjacent parcels of property within the Village — Parcel A and Parcel B. Palmer Trinity was initially approved in 1961 as the Palmer Preparatory School, and is located on Parcel A. Parcel B, the parcel at issue here, is a 32.5 acre property; there is one home on the property and the remaining ácreage is a mango grove. The northern half of Parcel B is zoned AU (agricultural zoning allowing one home per five acres) and the southern half is zoned EU-2 (estate single family zoning allowing one home per five
 
 *262
 
 acres). Palmer Trinity sought to rezone Parcel B from AU and EU-2 to EU-M (estate modified single family zoning allowing one home per 15,000 square feet).
 

 The properties surrounding Parcel B were all originally zoned AU or EU-2, but they have been changed to less restrictive zoning classifications as the agricultural character of the area has changed over the years. Those properties, including Parcel A, are now classified EU-M. The only exceptions are a strip of lots to the east and west of Parcel B, which are zoned EU-1,
 
 [1]
 
 and the property to the south of Parcel B, which is in the Village of Cutler Bay. All of the properties, including Parcel A and Parcel B, are designated Estate Density Residential in the Village’s comprehensive plan.
 

 In its application to rezone the property, Palmer Trinity also requested a special exception and non-use variances concerning further development of the school on both parcels. At the hearing on the application, the consideration of the rezoning request was expressly bifurcated from the other application requests. Despite this procedure, the Village issued Ordinance 08-06, denying rezoning and stating that “the rezoning, if approved, would allow for the physical expansion of the Palmer Trinity school, ... that the district boundary change, based upon the site specific development permitted by the application of Palmer Trinity, is not consistent with the Village’s Comprehensive Plan and Future Land Use Map,” and that “Palmer Trinity failed to adequately establish through its traffic studies that its site specific application is compatible and within the proper level of service, and failed to establish the proposition that the proposed use would not negatively impact the community.... ” The circuit court appellate division per curiam denied certiorari review of the rezoning ordinance. This appeal ensued.
 

 II.
 
 ANALYSIS
 

 On appeal, Palmer Trinity contends that the circuit court appellate division departed from the essential requirements of law in upholding Ordinance 08-06 because the current zoning classification of the surrounding properties renders Parcel B an “island” or “peninsula” resulting in impermissible “reverse spot zoning.” We agree.
 
 See Richard Road Estates, LLC v. Miami-Dade County Bd. of County Comm’rs,
 
 2 So.3d 1117, 1118 (Fla. 3d DCA 2009) (county’s refusal to grant a change in zoning resulted in impermissible reverse spot zoning, sufficient to warrant granting second tier certiorari review).
 
 See also Debes v. City of Key West,
 
 690 So.2d 700 (Fla. 3d DCA 1997).
 

 “Reverse spot zoning occurs when a zoning ordinance prevents a property owner from utilizing his or her property in a certain way, when virtually all of the adjoining neighbors are not subject to such a restriction, creating in effect, a veritable zoning island or zoning peninsula in a surrounding sea of contrary zoning classification. Reverse spot zoning is invalid, as it is confiscatory.”
 
 City of Miami Beach v. Robbins,
 
 702 So.2d 1329, 1330 (Fla. 3d DCA 1997). The record establishes that Palmer Trinity is not afforded the same beneficial use and restrictions for Parcel B that are enjoyed by the owners of the surrounding properties.
 
 Compare
 
 §§ 33-234 to 236,
 
 and
 
 33-279 to 283
 
 with
 
 § 33-224 to 225, Miami-Dade County Zoning Code.
 
 [2]
 
 Because the Village’s refusal to grant the zoning change results in impermissible reverse spot zoning, the circuit court appellate division’s decision affirming the Village’s denial of the zoning request
 
 *263
 
 constitutes a departure from the essential requirements of the law resulting in a miscarriage of justice.
 

 Contrary to the Village’s contention, there is no record justification for its refusal to rezone the property to a classification consistent with the properties surrounding Parcel B. As a matter of law, such refusal therefore was “arbitrary, discriminatory [and] unreasonable.”
 
 Bd. of County Comm’rs v. Snyder,
 
 627 So.2d 469, 476 (Fla.1993).
 

 In support of its position, the Village relies on findings that “the rezoning, if approved” would permit the physical expansion of the school, that the change based on the “site specific development” is not consistent with the comprehensive plan or future land map, and that Palmer’s traffic studies failed to establish that the “site specific” application is compatible and within the proper level of service and would not negatively impact the community.
 
 [3]
 
 The Village, however, expressly stated that the school’s expansion request was not at issue at the hearing, and that the Village did not consider the school’s special exception or variance requests.
 
 [4]
 
 In effect, the Village denied the rezoning request, and implicitly denied the special exception, because it did not wish Palmer Trinity to use the property to expand its school within the parameters of the less restricted EU-M zoning classification.
 

 The Village’s actions were legally impermissible. Palmer Trinity was “entitled to have [its] property zoned based on proper zoning concepts without regard to the one particular use which the owner might then intend to make of the various uses permitted under a zoning classification. A zoning authority’s insistence on considering the owner’s specific use of a parcel of land constitutes not zoning but direct governmental control of the actual use of each parcel of land which is inconsistent with constitutionally guaranteed private property rights.”
 
 Porpoise Point P’ship v. St. Johns County,
 
 470 So.2d 850, 851 (Fla. 5th DCA 1985).
 
 See also Debes,
 
 690 So.2d at 702. Because the Village relied on Palmer Trinity’s intended use of the property in denying the rezoning request, we further conclude that the circuit court appellate division’s decision upholding Village Ordinance 08-06 constituted a departure from the essential requirements of the law resulting in a miscarriage of justice.
 

 For these reasons, the decision of the appellate division is quashed.
 

 Certiorari granted; decision quashed.
 

 [1]
 

 . EU-1 is estate single family zoning allowing one home per one acre.
 

 [2]
 

 . The Village’s Planning and Zoning Powers Ordinance states that ”[c]hapter 33 of the
 
 *263
 
 Miami-Dade Code entitled ‘Zoning’ ... shall be applied within the municipal boundaries of the Village of Palmetto Bay_”
 
 See
 
 § 31-fid) of the Village of Palmetto Bay Planning and Zoning Powers Ordinance.
 

 [3]
 

 . We note that, in contrast, the Village staff zoning analysis recommendation as to the rezoning request stated:
 

 The requested district boundary change to EU-M would be in keeping with the basic intent and purpose of the zoning and land use regulations. Approval of this application is in character with the existing use of the property, and is consistent with the Village’s Comprehensive Plan. The properties surrounding the site are currently zoned EU-M, as a result the rezoning of the AU and EU-2 site to EU-M would make the parcels compatible with the neighboring properties.
 

 [4]
 

 . To the contrary, Section 4 of the Ordinance states that "[l]he village council never considered the variance and special exception requests of the applicant as these requests required a separate public hearing and separate ruling, dependent on the village council approving the district boundary change.”