# The Supreme Court of South Carolina

Ani Creation, Inc. d/b/a Rasta: Ani Creation, Inc. d/b/a Wacky T's; Blue Smoke, LLC d/b/a Doctor Vape: Blue Smoke, LLC d/b/a Blue Smoke Vape Shop; ABNME, LLC d/b/a Best for Less; Koretzky, LLC d/b/a Grasshopper; Red Hot Shoppe, Inc.; E.T. Sportswear, Inc, d/b/a Pacific Beachwear; Myrtle Beach General Store, LLC; I Am It, Inc. d/b/a T-Shirt King; and Blue Bay Retail, Inc. d/b/a Surf's Up, Appellants,

v.

City of Myrtle Beach Board of Zoning Appeals and Ken May, Zoning Administrator for City of Myrtle Beach, Respondents.

Appellate Case No. 2021-001074

---

## ORDER

---

After careful consideration of Appellants' petition for rehearing, the Court grants the petition for rehearing, dispenses with further briefing, and substitutes the attached opinion for the opinion previously filed in this matter.

| | |
|---|---|
| s/ Donald W. Beatty | C.J. |
| s/ John W. Kittredge | J. |
| s/ John Cannon Few | J. |
| s/ George C. James, Jr. | J. |
| s/ Kaye G. Hearn | A.J. |

Columbia, South Carolina
June 28, 2023

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Ani Creation, Inc. d/b/a Rasta: Ani Creation, Inc. d/b/a Wacky T's; Blue Smoke, LLC d/b/a Doctor Vape: Blue Smoke, LLC d/b/a Blue Smoke Vape Shop; ABNME, LLC d/b/a Best for Less; Koretzky, LLC d/b/a Grasshopper; Red Hot Shoppe, Inc.; E.T. Sportswear, Inc, d/b/a Pacific Beachwear; Myrtle Beach General Store, LLC; I Am It, Inc. d/b/a T-Shirt King; and Blue Bay Retail, Inc. d/b/a Surf's Up, Appellants,

v.

City of Myrtle Beach Board of Zoning Appeals and Ken May, Zoning Administrator for City of Myrtle Beach, Respondents.

Appellate Case No. 2021-001074

———————

Appeal from Horry County
Benjamin H. Culbertson, Circuit Court Judge

———————

Opinion No. 28151
Heard February 9, 2023 – Filed April 19, 2023

Re-filed June 28, 2023

———————

**AFFIRMED**

———————

Reese R. Boyd III, of Davis & Boyd, LLC, of Myrtle Beach, and Gene McCain Connell Jr., of Kelaher, Connell,

& Connor, PC, of Surfside Beach, both for Appellants.

Michael Warner Battle, of Battle Law Firm, LLC, of Conway, for Respondents.

---

**JUSTICE KITTREDGE:** The City of Myrtle Beach (the city) is a town economically driven and funded by tourism. After receiving frequent criticism from tourists and residents alike, the city became concerned that the proliferation of smoke shops and tobacco stores were repelling families from the area due to those stores' merchandise and advertising practices. More specifically, the city was troubled with those shops' sale of sexually explicit items, cannabidiol (CBD)-infused products, and tobacco paraphernalia. Therefore, in an effort to improve the "family friendly" nature of the downtown area, the city created a zoning overlay district[1] that prohibited the operation of smoke shops and tobacco stores, among others, in the city's downtown.

Appellants are nine of the twenty-five affected stores located in the area, and each was issued a citation by the city's zoning administrator for failing to comply with the zoning overlay ordinance. Following a complicated legal battle, appellants raised a host of constitutional challenges to the zoning overlay ordinance. However, the circuit court found the ordinance survived appellants' veritable barrage. Appellants directly appealed that decision to this Court. We now hold that, under this Court's long-standing precedent, the overlay ordinance did not impermissibly spot zone the city's historic downtown area. We additionally find the overlay ordinance is a constitutional exercise of the city's police powers. We therefore affirm the decision of the circuit court and uphold the validity of the ordinance.

## I.

## A.

In 2011, the city adopted a comprehensive plan that, among other things, set forth future objectives aimed at increasing tourism and revenue. In the comprehensive plan, the city noted that tourists and residents had repeatedly expressed concern over

---

[1] *See* S.C. Code Ann. § 6-29-720(C)(5) (Supp. 2022) (defining an overlay zone as "a zone which imposes a set of requirements or relaxes a set of requirements imposed by the underlying zoning district when there is a special public interest in a particular geographic area that does not coincide with the underlying zone boundaries").

the "noise and behavior of certain groups visiting the area," resulting in "negative perceptions about Myrtle Beach." Likewise, the city determined that "[c]rime and the perception of crime [was] a problem that need[ed] addressing." The city concluded all businesses needed to encourage and support a "family beach image" and determined that a positive "city image" would foster more tourism. To that end, the city outlined a number of specific objectives, including its desires to (1) "define and maintain Myrtle Beach as a family beach"; (2) "revitalize the downtown area of Myrtle Beach"; and (3) "create an environment[] which ensures that visitors and residents are safe."

Ultimately, the Myrtle Beach city council effectuated those objectives by enacting Ordinance 1807 (the ordinance), which created a zoning overlay district—known as the Ocean Boulevard Entertainment Overlay District (OBEOD)—that encompassed the historic downtown area of the city. Myrtle Beach, S.C., Code of Ordinances app. A § 1807 (2019). In creating the OBEOD, the ordinance extensively set forth its purpose and intent, emphasizing, among other things, the importance of fostering more family tourism and discouraging things that were "repulsive" to families, including "unhealthy tobacco use, crudity and the stigma of drug use and paraphernalia." *Id.* § 1807.A. As a result, the city council found the displacement of smoke shops and tobacco stores from the historic downtown area was "in the interests of the public health, safety, and general welfare." *Id.* Likewise, city council stated the presence of smoke shops and tobacco stores heightened the risk of "negative aesthetic impacts, blight, and loss of property values of residential neighborhoods and businesses in close proximity to such uses." *Id.* Finally, city council noted that despite the creation of the OBEOD, there were numerous other locations throughout the city available for the continued operation of smoke shops and tobacco stores. *Id.*

Following the city council's lengthy recitation of the purpose and rationale underlying the ordinance, the ordinance prohibited certain retail businesses and offerings within the OBEOD, including (1) smoke shops and tobacco stores; (2) any merchandising of tobacco paraphernalia or products containing CBD, such as lotions, oils, and food; (3) any merchandising of tobacco products more than that of an incidental nature (i.e., more than 10% of store's inventory); and (4) any merchandising of sexually oriented material (collectively, the prohibited retail uses). *Id.* § 1807.D.

The prohibited retail uses were declared immediately nonconforming upon passage of the ordinance on August 14, 2018. *Id.* § 1807.E. However, the ordinance provided for an amortization period that gave affected businesses until December 31, 2018, to cease the nonconforming part of their retail offerings. *Id.* The ordinance

likewise stated that, should a business continue engaging in the prohibited retail uses, it would be subject to suspension or revocation of its business license. *Id.* § 1807.F.

## B.

Shortly before the end of the amortization period, on December 19, 2018, appellants filed suit in federal court seeking damages, injunctive relief, and a declaration that the ordinance was unconstitutional.[2] Two days later, appellants filed a motion for a temporary restraining order, but the parties resolved the motion by consent, agreeing the city would enforce the ordinance "through use of [the city's] zoning ordinance administrative procedures."

Six months later, the city's zoning administrator issued individual citations to each of the appellants for continuing to engage in the prohibited retail uses in violation of the ordinance. The zoning administrator also requested that each of the businesses comply with the ordinance. No penalties were imposed on appellants at that time; rather, the letters were merely the zoning administrator's determination that appellants' businesses were nonconforming under the ordinance.

Appellants appealed the zoning administrator 's determination to the city's Board of Zoning Appeals (BZA). At the BZA hearing, the zoning administrator set forth evidence as to how each appellant was engaged in the prohibited retail uses, submitting photographs of appellants' stores and merchandise. Appellants' only witness, Tim Wilkes, conceded each of appellants' stores was engaged in one or more of the prohibited retail uses. Nonetheless, appellants requested the BZA either

---

[2] The federal lawsuit alleged the ordinance amounted to an unconstitutional taking and violated appellants' rights to free speech, due process, and equal protection. Eventually, the federal court dismissed appellants' due process claim, citing the *Burford* abstention doctrine. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726–27 (1996) (explaining the *Burford* abstention doctrine allows a federal court to dismiss a case "only if it presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern" (citation omitted) (internal quotation marks omitted)). The federal court also dismissed the takings claim without prejudice, finding the claim was not yet ripe. The court stayed the remaining claims (free speech and equal protection) pending resolution of this state court proceeding.

declare the ordinance unconstitutional or grant variances to appellants so that they could continue engaging in the prohibited retail uses. Ultimately, the BZA found (1) it did not have jurisdiction to declare the ordinance unconstitutional;[3] (2) it could not grant a use variance because it would allow the continuation of a use not otherwise allowed in the OBEOD;[4] and (3) appellants' businesses were engaged in one or more of the prohibited retail uses.

Appellants appealed the BZA's decision to the circuit court, but the circuit court affirmed the BZA's decision and found meritless appellants' twenty-five grounds for challenging the ordinance. In relevant part, the circuit court held the boundaries of the OBEOD were not arbitrary and capricious, citing to the city council's extensive recitation of the rationale for adopting the OBEOD and locating the boundaries where it did. *See* Myrtle Beach, S.C., Code of Ordinances app. A § 1807.A. The circuit court also found that whether the ordinance promoted the public welfare was "fairly debatable." In support, the circuit court cited to the zoning administrator's testimony regarding a number of complaints he had received regarding the sale of tobacco paraphernalia and sexually oriented merchandise in the historic downtown where there was a high level of pedestrian traffic by families with young children. The court thus concluded appellants had failed to meet their burden to show the ordinance was unconstitutional.

Appellants directly appealed to this Court pursuant to Rule 203(d)(1)(A)(ii), SCACR, raising five issues challenging the validity of the ordinance on both procedural and constitutional grounds.[5] We address each in turn.

---

[3] *See* S.C. Code Ann. § 6-29-800(E) (Supp. 2022) (explaining that in exercising its statutory authority, as outlined in subsection (A), the BZA "has all the powers of the officer from whom the appeal is taken"). No one contends the zoning administrator here—the "officer from whom the appeal [was] taken"—would have had the authority to declare a zoning ordinance unconstitutional.

[4] *See* S.C. Code Ann. § 6-29-800(A)(2)(d)(i) ("The [BZA] may not grant a variance, the effect of which would be to allow the establishment of a use not otherwise permitted in a zoning district, to extend physically a nonconforming use of land or to change the zoning district boundaries shown on the official zoning map. The fact that property may be utilized more profitably, if a variance is granted, may not be considered grounds for a variance. Other requirements may be prescribed by the zoning ordinance.").

[5] To be more precise, appellants' brief listed eleven issues on appeal, but because

## II.

"A municipal ordinance is a legislative enactment and is presumed to be constitutional." *Town of Scranton v. Willoughby*, 306 S.C. 421, 422, 412 S.E.2d 424, 425 (1991) (per curiam); *see also Rush v. City of Greenville*, 246 S.C. 268, 276, 143 S.E.2d 527, 531 (1965) ("There is a strong presumption in favor of the validity of municipal zoning ordinances, and in favor of the validity of their application . . . ."). Courts must make every presumption in favor of the constitutionality of a legislative enactment. *McMaster v. Columbia Bd. of Zoning Appeals*, 395 S.C. 499, 504, 719 S.E.2d 660, 662 (2011) (per curiam) (quoting *City of Rock Hill v. Harris*, 391 S.C. 149, 154, 705 S.E.2d 53, 55 (2011)). Thus, courts may only declare a municipal ordinance unconstitutional "when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution." *Id.* at 504, 719 S.E.2d at 663 (quoting *Harris*, 391 S.C. at 154, 705 S.E.2d at 55).

More specifically, "The Court will not overturn the action of the City if the decision is fairly debatable because the City's action is presumed to have been a valid exercise of power and it is not the prerogative of the Court to pass upon the wisdom of the decision." *Rushing v. City of Greenville*, 265 S.C. 285, 288, 217 S.E.2d 797, 799 (1975); *see also Rush*, 246 S.C. at 276, 143 S.E.2d at 531 (explaining the Court must exercise "carefully and cautiously" its power to declare a challenged ordinance invalid on the basis that the ordinance unreasonably impaired or destroyed a constitutional right). Thus, when a local city council enacts a zoning ordinance after considering all of the relevant facts, the Court should not disturb the council's action unless the council's findings were arbitrary and capricious or had no reasonable relation to a lawful purpose. *Rush*, 246 S.C. at 276, 143 S.E.2d at 531; *Rest. Row Assocs. v. Horry Cnty.*, 335 S.C. 209, 216, 516 S.E.2d 442, 446 (1999); *see also Willoughby*, 306 S.C. at 422, 412 S.E.2d at 425 ("The exercise of police power under a municipal ordinance is subject to judicial correction only if the action is arbitrary and has no reasonable relation to a lawful purpose." (citation omitted)); *Aakjer v. City of Myrtle Beach*, 388 S.C. 129, 133, 694 S.E.2d 213, 215 (2010) ("This State's constitution provides that the powers of local governments should be liberally construed." (citing S.C. Const. art. VIII, § 17)).

The burden of establishing the invalidity of a zoning ordinance is on the party attacking it to establish by clear and convincing evidence that the acts of the city council were arbitrary, unreasonable, and unjust. *Bibco Corp. v. City of Sumter*, 332

some of the issues overlapped, we have condensed them to five.

S.C. 45, 52, 504 S.E.2d 112, 116 (1998) (citing *Willoughby*, 306 S.C. at 422, 412 S.E.2d at 425); *Rush*, 246 S.C. at 276, 143 S.E.2d at 531.

## III.

Appellants first argue the ordinance is defective as a matter of law because it was not adopted following the procedure set forth in section 5-7-270 of the South Carolina Code. *See* S.C. Code Ann. § 5-7-270 (2004) (requiring generally that municipal ordinances be "read two times on two separate days with at least six days between each reading" prior to being adopted and having the force of law). Specifically, appellants contend the versions of the ordinance introduced for the first and second readings were so different from one another that the city council was required to conduct a third reading prior to enacting the ordinance. We disagree.

Because appellants failed to timely challenge the efficacy of the two readings of the ordinance, they are statutorily barred from raising this issue. Section 6-29-760(D) of the South Carolina Code (2004) requires parties to challenge the validity of an ordinance within sixty days of the decision of the governing body, provided "there has been substantial compliance with the notice requirements of this section or with established procedures of the governing authority or the planning commission." The ordinance was formally adopted and went into effect upon the second reading on August 14, 2018. Appellants did not file their federal suit or take any other formal action to challenge the validity of the ordinance until December 19, 2018—well over sixty days later. As a result, appellants can no longer challenge the validity of the ordinance under section 5-7-270. *See Quail Hill, L.L.C. v. Cnty. of Richland*, 379 S.C. 314, 320–21, 665 S.E.2d 194, 197 (Ct. App. 2008) (holding a challenge to the validity of the enactment of a county ordinance was untimely because the challenge was made long after the sixty-day window had closed), *aff'd in part on this ground and rev'd in part on other grounds*, 387 S.C. 223, 692 S.E.2d 499 (2010).

Even were we to overlook the untimeliness of appellants' challenge and address the merits of their argument, appellants' suggestion that the two readings of the ordinance were vastly different is simply untrue. While the city council expanded the "purpose and intent" section of the original version of the ordinance and added a number of definitions, the prohibited retail uses in the final version were identical to those in the original version. If anything, the amendments merely better-defined the terms used to describe actions or merchandise that qualified as a prohibited retail use. There is no basis on which to conclude the amendments to the ordinance were so drastic as to trigger the need for a new first reading. *Cf. Brown v. Cnty. of Charleston*, 303 S.C. 245, 247, 399 S.E.2d 784, 785–86 (Ct. App. 1990) (explaining the purpose of providing public notice related to zoning amendments is to satisfy the

"general principles of due process that require notice which fairly and reasonably apprises those whose rights may be affected of the nature and character of the action proposed"). We therefore affirm the circuit court's decision as to this issue.

## IV.

Appellants next argue the ordinance violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Specifically, appellants broadly contend the creation of the OBEOD was unfair to them because they cannot sell certain merchandise that similar stores can continue selling in other areas of the city. Appellants therefore claim the creation of the OBEOD was arbitrary and capricious because it treated them differently from other, similarly situated businesses throughout the city. Appellants point to three specific concerns as evidencing the arbitrary and capricious nature of the ordinance: (1) city council reverse spot zoned the OBEOD; (2) the boundaries of the OBEOD are not drawn in straight lines or with any discernable reasoning behind them; and (3) there is no evidence that the prohibited retail uses affect public safety. We will address each of these concerns below.[6]

## A.

Appellants first contend the ordinance constitutes impermissible reverse spot zoning—a novel issue in South Carolina. We disagree.

There are two types of spot zoning. Traditional spot zoning occurs when a small parcel of land is singled out for a use classification different from that of the surrounding area, for the benefit of the parcel's owner(s) and to the detriment of others. *Bob Jones Univ. v. City of Greenville*, 243 S.C. 351, 361, 133 S.E.2d 843, 848 (1963); *see also id.* at 362, 133 S.E.2d at 848 (noting it is "not [] considered [] spot zoning where the proposed change is from one use to another and there was already a considerable amount of property adjoining the property sought to be

---

[6] Amongst their eleven issues on appeal, appellants raise two takings claims. The first is a traditional takings claim arising under the Fifth Amendment to the United States Constitution, which we address further below. The second is a claim that because the ordinance violated appellants' right to equal protection, the ordinance took their business without just compensation. Appellants' Br. at 10. We find such an argument meritless and do not address it further other than to note that takings and equal protection are two distinct constitutional doctrines with wholly separate requirements and bodies of case law.

reclassified falling within the proposed [new use] classification" (citing *Eckes v. Bd. of Zoning Appeals*, 121 A.2d 249 (Md. 1956))). Typically, traditional spot zoning singles out and reclassifies a relatively small tract that is owned by a single person and surrounded by a much larger, uniformly zoned area, such that the small tract is relieved from restrictions to which the rest of the area is subjected. *See Talbot v. Myrtle Beach Bd. of Adjustment*, 222 S.C. 165, 175, 72 S.E.2d 66, 71 (1952) (citation omitted); Mark S. Dennison, Annotation, *Determination whether zoning or rezoning of particular parcel constitutes illegal spot zoning*, 73 A.L.R.5th 223 (1999) ("The zoning or rezoning of a single tract of land, usually small in size, such that it is zoned differently from surrounding property may be invalidated as illegal spot zoning.").

In contrast, reverse spot zoning occurs when a zoning ordinance restricts the use of a property when virtually all the property's adjoining neighbors are not subject to the use restriction. 83 Am. Jur. 2d *Zoning and Planning* § 89 (2013). Oftentimes, reverse spot zoning occurs where a zoning "island" develops as the result of a municipality's failure to rezone a portion of land to bring it into conformity with similar surrounding parcels that are otherwise indistinguishable. *In re Realen Valley Forge Greenes Assocs.*, 838 A.2d 718, 731 (Pa. 2003); *Palmer Trinity Priv. Sch., Inc. v. Vill. of Palmetto Bay*, 31 So. 3d 260, 262 (Fla. Dist. Ct. App. 2010) ("The properties surrounding Parcel B were all originally zoned AU or EU-2, but they have been changed to less restrictive zoning classifications as the agricultural character of the area has changed over the years.").

Thus, spot zoning may arise in two ways: (1) by an affirmative legislative act that affects the parcel at issue (traditional spot zoning); or (2) by changes to the zoning map around the parcel at issue (reverse spot zoning). *See* 39 Am. Jur. Proof of Facts 3d 433, § 3 (West 2023) (describing types of spot zoning challenges).

Spot zoning is not impermissible per se in South Carolina. Rather, as this Court has previously explained,

> [W]here an ordinance establishes a small area within the limits of a zone in which are permitted uses different from or inconsistent with those permitted within the larger, such "spot zoning" is invalid where the ordinance does not form a part of a comprehensive plan of zoning or is for mere private gain as distinguished from the good of the common welfare.

*Talbot*, 222 S.C. at 175, 72 S.E.2d at 71 (citation omitted); *see also id.* at 175, 72 S.E.2d at 70 (cautioning that courts should not "become city planners but [should only] correct injustices when they are clearly shown to result from the municipal

action"). Thus, when the Court finds an ordinance constitutes spot zoning, "the appropriate analysis is to closely scrutinize the following factors: (1) the adherence of the zoning to the City's comprehensive plan; and (2) promotion of the good of the common welfare but to only correct injustices which are clearly shown." *Knowles v. City of Aiken*, 305 S.C. 219, 223, 407 S.E.2d 639, 642 (1991); *see also* 39 Am. Jur. Proof of Facts 3d 433 ("Legal challenges to [spot zoning] are generally based on allegations and proof of discriminatory treatment of a single landowner, inconsistency with the comprehensive plan, incompatibility with neighboring uses, and harm to the general welfare of the community.").

Here, despite Appellants' contentions, the creation of the OBEOD does not fit within the accepted definition of reverse spot zoning. The prohibited retail uses in the OBEOD were not the result of a zoning "island" that developed as the surrounding area was rezoned while the OBEOD was left behind; rather, the OBEOD was created by an affirmative legislative act by the city. In other words, if anything, the creation of the OBEOD more closely resembles traditional spot zoning.

However, we find it equally doubtful the creation of this overlay district constituted traditional spot zoning. The OBEOD is a fairly large area: it overlays at least twenty distinct zones; it comprises an approximate rectangle measuring slightly less than two miles by one-quarter mile; and it encompasses over fifty city blocks which are, of course, further divided into a significant number of individual properties owned by separate property owners. It goes without saying that creating an overlay zoning district over such a large, diverse area is distinct from the typical, traditional spot zoning factual scenario. *See Talbot*, 222 S.C. at 175, 72 S.E.2d at 71 (noting spot zoning occurs when an ordinance affects a small area within the limits of a single zone); Dennison, *supra*, 73 A.L.R.5th at 223 (explaining spot zoning involves a single, small tract of land); 39 Am. Jur. Proof of Facts 3d 433 (stating spot zoning challenges generally require proof the ordinance has affected a single landowner).

Even were we to accept appellants' argument that the creation of the OBEOD constituted spot zoning in some fashion, we find that argument unavailing. Specifically, applying the test outlined in *Knowles* and *Talbot*, we find any spot zoning caused by the ordinance was legally permissible. *See Knowles*, 305 S.C. at 223, 407 S.E.2d at 642; *Talbot*, 222 S.C. at 175, 72 S.E.2d at 70. First, the ordinance was consistent with the city's comprehensive plan. Second, as we discuss further below, it is "fairly debatable" that city council enacted the ordinance to promote the public welfare. *See Rushing*, 265 S.C. at 288, 217 S.E.2d at 799 (explaining the Court will not overturn a municipality's action if the decision is "fairly debatable" because the action is presumed to be a valid exercise of power, and it is not the Court's prerogative to weigh in on the wisdom of the decision). Third, the ordinance

did not result in clear injustice to appellants: even after the creation of the OBEOD, appellants retained ownership of their property—the real estate and the merchandise—and they presented no evidence that they could not pivot to another business model. *See Helena Sand & Gravel, Inc. v. Lewis & Clark Cnty. Plan. & Zoning Comm'n*, 290 P.3d 691, 699–700 (Mont. 2012) (applying the state's traditional spot zoning test under a similar factual scenario, rather than some separate reverse-spot-zoning test, and concluding that because the zoning regulation was consistent with the county's comprehensive plan, it was not impermissible spot zoning); *cf.* S.C. Code Ann. § 6-29-800(A)(2)(d)(i) (noting the BZA may not grant a variance if the effect of the variance would be to allow a use not otherwise permitted in a zoning district, and "[t]he fact that property may be utilized more profitably, if a variance is granted, may not be considered grounds for a variance"). We therefore reject appellants' equal protection challenge on the basis of impermissible spot zoning.

## B.

Second, appellants contend the OBEOD's boundaries are irrational and, to be constitutional, must ban the prohibited retail uses throughout the entire city. We disagree.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Where, as here, "there is no suspect or quasi-suspect class and no fundamental right is involved, zoning ordinances should be tested under the 'rational basis' standard." *Bibco Corp.*, 332 S.C. at 52, 504 S.E.2d at 116.

Under rational basis review, the Equal Protection Clause is satisfied so long as (1) there is a plausible policy reason for the classification; (2) the facts on which the classification is based rationally may have been considered to be true by the decision maker; and (3) the relationship of the classification to the goal is not so attenuated as to render the distinction arbitrary or irrational. *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992); *see also Denene, Inc. v. City of Charleston*, 359 S.C. 85, 91, 596 S.E.2d 917, 920 (2004) ("Under the rational basis test, the requirements of equal protection are satisfied when: (1) the classification bears a reasonable relation to the legislative purpose sought to be affected; (2) the members of the class are treated alike under similar circumstances and conditions; and[] (3) the classification rests on some reasonable basis."). A party challenging a legislative enactment under rational basis review "must negate every conceivable basis which might support" the enactment and, therefore, has a "steep hill to climb." *Bodman v. State*, 403 S.C. 60, 69–70, 742

S.E.2d 363, 367–68 (2013) (quoting *Lee v. S.C. Dep't of Nat. Res.*, 339 S.C. 463, 470 n.4, 530 S.E.2d 112, 115 n.4 (2000)) (internal quotation marks omitted)).

Here, the ordinance explicitly states the city council enacted the ordinance to foster a more "family friendly" atmosphere in the historic downtown area and encourage more tourism by families. *See* Myrtle Beach, S.C., Code of Ordinances app. A § 1807.A. The zoning administrator testified that he had received complaints from families about the prohibited retail uses. The city council found the prohibited retail uses "repelled" families from the area. We find it is, at the very least, "fairly debatable" that prohibiting the sale of sexually oriented merchandise and tobacco paraphernalia would encourage a more "family friendly" atmosphere in the historic downtown area. *See Rushing*, 265 S.C. at 288, 217 S.E.2d at 799 (stating the Court should not overturn a municipality's decision if the action is "fairly debatable").

Moreover, the zoning administrator stated the boundaries for the OBEOD corresponded with the boundaries of the historic downtown area of the city as much as was practical. Those boundaries were set long ago based on pedestrian travel patterns, family-friendly attractions, and historical uses that preexisted the ordinance. There are two deviations from the historic downtown's boundary lines, both of which have rational explanations. First, the northwestern edge of the OBEOD is shifted half a block away from US-17 Business (the boundary for the historic downtown). Because the OBEOD was created in part to foster more pedestrian traffic in the historic downtown, and because the city council did not believe families of pedestrians would readily walk along a busy road such as US-17 Business, the city council felt it unnecessary to include that portion of the historic downtown in the OBEOD. Second, and relatedly, the boundary line does not run in a completely straight line along the backs of *every* property that fronts US-17 Business because it cannot: two properties in the OBEOD are large enough that they comprise several city blocks, stretching from US-17 Business all the way to Ocean Boulevard.[7] In those two places, the boundary line runs on the US-17 Business side of the property rather than the ocean-side of the property. The city's decision regarding where to set the boundaries of the OBEOD is certainly not irrational or without basis.

Appellants have failed to show by clear and convincing evidence that the location of or rationale behind the boundaries of the OBEOD is arbitrary and capricious. Consequently, the boundaries of the OBEOD are valid. *See McMaster*, 395 S.C. at

---

[7] One property contains Pavilion Park, and the other contains Family Kingdom Amusement Park.

504, 719 S.E.2d at 663 (quoting *Harris*, 391 S.C. at 154, 705 S.E.2d at 55); *Knowles*, 305 S.C. at 224, 407 S.E.2d at 642. As the circuit court found, "Zones must have beginning and terminating points. If the existence of divergent uses across zone boundary lines were taken *per se* as an appropriate basis for a constitutional violation, the entire zone plan in any municipality might well crumble by chain reaction." (Citations omitted.) The disparate treatment of similarly situated businesses on either side of the OBEOD boundary line is not a basis on which to find an equal protection violation. *Cf. Bibco Corp.*, 332 S.C. at 52–54, 504 S.E.2d at 116–17 (finding a zoning ordinance that prohibited mobile homes from some residential districts in the city—but not all—survived rational basis review).

## C.

Finally, appellants argue the creation of the OBEOD was arbitrary and capricious because the city did not submit any evidence that the prohibited retail uses impacted public safety. We summarily dismiss this argument, as appellants—not the city—had the burden of proof. *Rush*, 246 S.C. at 276, 143 S.E.2d at 531. The city did not need to submit anything affirmatively proving its policy decision was correct. *Cf. Nordlinger*, 505 U.S. at 11 (noting that the Equal Protection Clause requires only that the legislative fact on which the classification is apparently based rationally *may* have been considered to be true by the governmental decisionmaker). Rather, it was incumbent upon appellants to submit evidence that the city's policy decision was based on a faulty factual premise, and the prohibited retail uses had no impact on public safety. Appellants failed to do so.

Accordingly, we hold appellants have failed to demonstrate the ordinance violated their right to equal protection, and we affirm the circuit court's decision on this basis.

## V.

Next, appellants raise two due process arguments. First, appellants argue the ordinance does not explicitly provide for a hearing in which an affected vendor could challenge the zoning administrator's finding that certain merchandise fits within the ordinance's definition of sexually oriented merchandise. Second, appellants contend the ordinance imposes an arbitrary and unreasonable amortization period. We disagree with both arguments.

We reject appellants' first argument as it is based on a faulty factual premise. Rather, section 6-29-800(A)(1) of the South Carolina Code explicitly provides the BZA has the authority to hear any appeal "where it is alleged there is error in . . . [a] determination made by an administrative official in the enforcement of the zoning

ordinance."  Section 6-29-800(E) additionally provides the BZA "has all the powers of the officer from whom the appeal is taken" and, therefore, may determine—just as the zoning administrator does in the first instance—whether the challenged merchandise fits within the ordinance's definition of "sexually oriented merchandise."  Further, as occurred here, should an affected property owner disagree with the BZA's decision, it can appeal the decision to the circuit court and, if necessary, this Court.[8]

Turning to appellants' second due process argument, we find any contention that the amortization period was too draconian is moot.  *See Curtis v. State*, 345 S.C. 557, 567, 549 S.E.2d 591, 596 (2001) ("An appellate court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy. . . .  A case becomes moot when judgment, if rendered, will have no practical legal effect upon the existing controversy." (cleaned up)).  Any attempts by the city to enforce the ordinance and actually impose the provided-for civil penalties were stymied by the pendency of this appeal.  As a result, appellants have had nearly five years to come into compliance with the ordinance and, apparently, have failed to do so.  We cannot say an effective five-year amortization period is per se unreasonable.

We therefore reject both of appellants' due process claims.

## VI.

Appellants additionally claim the ordinance effects a taking of their property without just compensation, specifically citing the three-factor test set forth by the United States Supreme Court in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978) (explaining that, in regulatory takings cases, courts should examine (1) the economic impact of the regulation on the affected property; (2) the extent to which the regulation interfered with the property owner's investment-backed expectations; and (3) the character of the government action).  We disagree.

Takings claims are "essentially ad hoc, factual inquiries" that "depend[] largely upon the particular circumstances in that case."  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322, 336 (2002) (cleaned up); *see also Dunes W. Golf Club, L.L.C. v. Town of Mt. Pleasant*, 401 S.C. 280, 314, 737 S.E.2d 601, 619

---

[8] Of course, here, appellants conceded they were engaged in the prohibited retail uses, so there would be no need for an additional hearing challenging the determination of the zoning administrator.

(2013) (explaining the question of whether a taking has occurred is a question of law that this Court must review de novo (citations omitted)).  Appellants, however, have not developed any of the facts necessary to support a takings claim.  For example, they do not quantify the economic impact of the ordinance on their properties—the first *Penn Central* factor.  *See Penn Cent.*, 438 U.S. at 124.  Rather, appellants merely claim the impact is a "significant amount" that is "dire" and "severe."[9]

We are left to speculate about the facts necessary to support appellants' takings claim.[10]  We therefore reject appellants' claim that the ordinance took their property without just compensation in violation of the Fifth Amendment to the United States Constitution.

## VII.

Finally, appellants claim the ordinance criminalizes the sale of consumer products that are otherwise legal under state law, and it therefore conflicts with—and must be

---

[9] This lack of specificity stands in stark contrast to other takings cases, where parties typically quibble over the appropriate numbers to enter into the takings fraction, as well as the exact percentage necessary to amount to an unconstitutional taking.  *See, e.g.*, *Murr v. Wisconsin*, 137 S. Ct. 1933, 1941 (2017) (explaining the parties submitted competing appraisals for the value of the affected properties, including figures corresponding to the values of the properties with and without the challenged regulation); *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 534 (2005) (discussing the exact figures corresponding to the impact of the challenged regulation on each of sixty-four affected properties owned by the claimant); *Tahoe-Sierra Pres. Council*, 535 U.S. at 302, 316 n.12 (involving a dispute over how to define and calculate the denominator of the takings fraction, and detailing the average values of the over-400 affected properties); *Palazzolo v. Rhode Island*, 533 U.S. 606, 616 (2001) (explaining the plaintiff in a takings action submitted an appraiser's report to quantify the amount of damages sought).

[10] In fact, appellants make no argument at all regarding the second and third *Penn Central* factors, i.e., the extent to which the ordinance impacted their investment-backed expectations or the character of the government action.  We therefore find appellants have abandoned any argument regarding those two factors.  *See Video Gaming Consultants, Inc. v. S.C. Dep't of Revenue*, 342 S.C. 34, 42 n.7, 535 S.E.2d 642, 646 n.7 (2000) (stating an issue is deemed abandoned if a party fails to make an argument as to the merits of the issue).

preempted by—the State's criminal laws.  This argument, too, rests on a faulty factual premise.

The ordinance does not impose any criminal penalties for continuing to engage in the prohibited retail uses after the amortization period; rather, the penalty provided for in the ordinance is the suspension or revocation of the nonconforming business's business license.  Myrtle Beach, S.C., Code of Ordinances app. A § 1807.F.  Thus, the ordinance does not criminalize the sale of legal products in contravention of the State's criminal laws.  *Compare, e.g.*, *Foothills Brewing Concern, Inc. v. City of Greenville*, 377 S.C. 355, 660 S.E.2d 264 (2008) (upholding the validity of a municipal ordinance banning smoking in bars and restaurants despite the fact that smoking was legal throughout the State, and finding significant the fact that the no-smoking ordinance imposed only civil penalties), *with Beachfront Ent., Inc. v. Town of Sullivan's Island*, 379 S.C. 602, 666 S.E.2d 912 (2008) (striking down a municipal ordinance banning smoking in the workplace because it imposed significant criminal penalties for violations and, therefore, conflicted with State law that otherwise allowed smoking in the workplace).  We therefore reject this argument as a basis on which to find the ordinance invalid.

## VIII.

After examining the host of appellants' constitutional and procedural challenges to the ordinance, we hold the ordinance was a valid exercise of the city's police powers. *See Rush*, 246 S.C. at 276, 143 S.E.2d at 530–31 ("The authority of a municipality to enact zoning ordinances, restricting the use of privately owned property[,] is founded in the police power.  The governing bodies of municipalities clothed with authority to determine residential and industrial districts are better qualified by their knowledge of the situation to act upon such matters than are the Courts, and they will not be interfered with in the exercise of their police power to accomplish [their] desired end unless there is [a] plain violation of the constitutional rights of [the] citizens.").  We therefore affirm the decisions of the circuit court and BZA.[11]

---

[11] As a final matter, appellants contend that our decision today overrules three of our prior decisions: *Pure Oil Division v. City of Columbia*, 254 S.C. 28, 173 S.E.2d 140 (1970); *Kerr v. City of Columbia*, 232 S.C. 405, 102 S.E.2d 364 (1958); and *James v. City of Greenville*, 227 S.C. 565, 88 S.E.2d 661 (1955).  We find those cases manifestly distinguishable from the present case.  *See, e.g.*, *Pure Oil*, 254 S.C. at 34, 173 S.E.2d at 143 ("We have recognized the rule that, when a zoning or building permit has been properly issued and the owner has incurred expenses in reliance thereon, he acquires a vested properly right therein of which he cannot be deprived

**AFFIRMED.**

**BEATTY, C.J., FEW, JAMES, JJ., and Acting Justice Kaye G. Hearn, concur.**

---

without cause *or in the absence of public necessity. . . . There are no intervening considerations of public necessity involved under the facts of this case.*" (emphasis added)). Here, of course, the city believed the creation of the OBEOD was a matter of public necessity, as it explained in detail in the purpose and intent section of the ordinance. *See generally* Myrtle Beach, S.C., Code of Ordinances app. A § 1807.A. Thus, our decision today in no way overrules *Pure Oil*, *James*, or *Kerr*.